**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry L. HORTON,**
**Defendant–Appellant.**

**No. 87–2290.**

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1988.

Decided April 26, 1988.

Spencer W. Waller, Chicago, Ill., for defendant-appellant.

Daniel Broch, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before CUMMINGS, WOOD, Jr. and FLAUM, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Larry L. Horton appeals his conviction following a plea of guilty in accordance with a plea agreement to one count of distributing cocaine in violation of 21 U.S. C. § 841(a)(1). He claims that the magistrate erred in denying his request for substitution of counsel because there was an irreconcilable conflict between Horton and his court-appointed attorney. He also contends that his attorney's publicly reported position as one of the finalists under consideration for nomination by the President of the United States for the Office of United States Attorney for the Western District of Wisconsin during the time that he represented Horton constituted an actual conflict of interest in violation of his Sixth Amendment right to effective assistance of counsel. Alternatively, Horton maintains that the irreconcilable conflict between Horton and his counsel, when considered along with counsel's conflict of interest and alleged total lack of preparation in Horton's case, constituted ineffective assistance of counsel. Finally, Horton argues that the magistrate erred in ordering him to pay $1,500 toward his own defense, pursuant to the terms of the Criminal Justice Act, 18 U.S.C. § 3006A(c) and (f).

On April 1, 1987, Horton was indicted on five counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). On April 10, 1987 the magistrate appointed Richard J. Callaway, pursuant to the provisions of the Criminal Justice Act, to represent Horton. About a week after his appointment Callaway was reported in the press to be one of four finalists being considered for the position of United States Attorney for the Western District of Wisconsin. Horton claims not to have been aware of that fact until after he had entered his guilty plea in

June 1987. The briefs do not specify exactly when or how Horton first became aware of Callaway's aspirations.

On the date of Callaway's appointment as counsel for Horton the magistrate held a bond hearing and ordered Horton detained without bond. He also ordered Horton to pay $1,500 toward the cost of his defense pursuant to sections 3006A(c) and (f) of the Criminal Justice Act. On April 22, 1987, a pretrial conference was held where Callaway acknowledged that he did not intend to file any pretrial motions because, as he explained, he had already received and reviewed the government's discovery materials. During that conference, the magistrate brought to Callaway's attention a *pro se* motion which Horton had filed requesting substitution of counsel. On the same day, the magistrate held an *ex parte* hearing, with Callaway and Horton, on Horton's motion.

At that *ex parte* hearing Horton reminded the magistrate that he had earlier appeared with another attorney, Alan Bates, but that the magistrate had denied him the right to be represented by Bates. The magistrate explained that attorney appointments under the Criminal Justice Act were rotated and that defendants were not entitled to select attorneys of their personal choice. Horton was advised, however, that if he preferred he could hire the lawyer of his choice, and then move for a substitution of counsel.

The hearing then turned to the issue of dismissing Callaway, Horton alleging that Callaway did not have his best interests at heart. The magistrate asked Horton to explain but Horton would not respond. Horton merely complained that Callaway wanted him to enter a plea of guilty. The magistrate explained to Horton that he need not plead guilty but that he could go to trial if he preferred. Horton then responded that he would not explain his problem to the court. He wanted a change of venue, he said, as it was a "prejudicial courtroom." The magistrate fully explained to Horton his trial rights and the function of counsel to evaluate the evidence and advise him according to his professional judgment. Horton could renew his motion before the district judge, the magistrate advised, but he was denying it.

Some discussion of bail followed but the magistrate reminded Horton that the pretrial services report revealed that Horton and his wife were heavy users of cocaine and that it was his trafficking which supported their habit. There was a discussion of how Horton could get in touch with his counsel. Horton replied that he did not want to communicate with his counsel, who he said only wanted to convict him. The magistrate's voiced conclusion was that it appeared Horton had made up his mind not to cooperate with Callaway.

Callaway then explained to the magistrate that he had visited Horton in jail twice, gone over the government's evidence, and that based on his twenty-six years of experience, much of it as a criminal defense lawyer, the plea bargain offered by the government was a fair offer. In Callaway's judgment, Horton risked a long sentence by going to trial on all counts. Callaway then told the magistrate about his difficulties with Horton in preparing a defense, explaining that Horton had given him no information that would suggest a legitimate defense to the five counts. Horton had advised him that he would not take the stand in his own defense, but that he planned to rely on character witnesses. There was mention of an alibi by Horton, he said, but that the so-called alibi was nothing which would constitute a defense. Horton's "alibi" was apparently based on his belief that the couple who had cooperated with the government in setting up the cocaine purchase were supposedly friends of Horton's and would deny it ever happened. Callaway pointed out, however, that this couple would be testifying on behalf of the government. In addition, the government had the names of 30 or 40 other people to whom Horton had sold cocaine. It also appears that Horton had given a statement that he was "merely a conduit" for drugs, and that this statement would preclude him from testifying to his alleged non-involvement. In view of the defense situation and the strength of the government's case, Callaway had rec-

ommended to Horton that he accept the government's offer, feeling that it was an extremely fair one. He acknowledged, however, that he and Horton were having problems communicating and offered to withdraw from the case. After hearing this discussion the magistrate advised Horton that he believed Horton was only trying to force appointment of counsel of his choice by "stonewalling." He was advised to cooperate with Callaway. His counsel, the magistrate explained, was not responsible for the strength of the government's case. The magistrate therefore denied Horton's motion to substitute counsel, advising him that he was free to renew his motion before the district court. Horton did not renew the motion.

That ad hoc hearing, full and fair in all respects and which was sealed, has been set forth in some detail as it explains the self-inflicted nature of the defendant's complaints. After that hearing, on June 5, 1987, Horton nonetheless appeared with Callaway before the district judge in order to accept the government's plea bargain offer. Horton was placed under oath and examined by the district judge with full explanation of rights and options. Horton advised the court that he had fully discussed the charges with Callaway. The judge then asked, "Are you fully satisfied with the counsel, representation and advice that has been provided you in this case by Mr. Callaway as your attorney?" Horton's response was, "Yes, Your Honor."

Then the court reviewed with Horton the details of the plea agreement. Horton stated he was familiar with it and that it was his desire to plead guilty to only one count, in accordance with the agreement. The judge then advised Horton that because of a prior felony drug conviction that there was an enhanced penalty. Horton said he also understood that. Horton, as part of the agreement, had indicated a willingness to cooperate with the government in other drug investigations, and in return the government would not prosecute him for any other violations he might make known to the government before sentencing. Horton advised that it all had been discussed with him, and that he understood and

agreed to it. He also denied any one had attempted in any way to force him to plead guilty. Again the trial judge mentioned Horton's right to go to trial.

The government proceeded to summarize its evidence, stating that the couple (who Horton had suggested at the hearing before the magistrate would be his alibi witnesses) had fully cooperated with the government in setting up the cocaine sale alleged in the count which Horton sought to plead to, and would testify. Horton admitted the transaction. That plea acceptance proceeding was thorough and careful, and is not challenged on appeal. After being sentenced on that count to six years imprisonment, with the remaining counts dismissed, Horton brought this appeal.

The issues Horton raises must be evaluated against that detailed summary of the prior proceedings. Two of the issues, the allegation that Callaway's consideration for appointment as United States Attorney created an actual conflict of interest, and that Callaway's alleged lack of preparation and investigation resulted in ineffective assistance of counsel, were not raised before the district court on either a motion for withdrawal of the guilty plea or for collateral relief under Title 28, U.S.C. § 2255. Horton has, however, raised those issues here and has asked us to pass on them. We shall do so as the record is adequate for that purpose.

■ Horton argues first that the magistrate's denial of his motion to substitute counsel constituted reversible error because the testimony of both Horton and Callaway at the *ex parte* hearing revealed that they were embroiled in an irreconcilable conflict. We have stated, however, that the denial of a motion for substitution of counsel is reviewable only for an abuse of discretion, provided that the defendant has been given an opportunity to explain the reasons for his request. *United States v. Hillsberg*, 812 F.2d 328, 333 (7th Cir.1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). We will find an abuse of discretion "only if there exists a demonstrable conflict of interests or if

counsel and defendant are so at odds as to prevent presentation of an adequate defense." *Id.; United States v. Morris,* 714 F.2d 669, 673 (7th Cir.1983). Although Horton now alleges that Callaway was laboring under a conflict of interest, he did not bring this matter to the attention of the magistrate during the *ex parte* hearing, so that the alleged conflict of interest cannot now be the basis for a finding of an abuse of discretion. We will discuss that issue separately.

■ We note that the magistrate gave Horton a full opportunity to explain the reason for his request for new counsel but that, despite the magistrate's willingness to hear him out, Horton was, for the most part, uncooperative and uncommunicative with the magistrate. Refusing to answer the magistrate's specific questions, Horton offered only a vaguely-voiced distrust of Callaway. We have held that the denial of a motion to substitute alleging only "ethereal distrust" of counsel is not reversible error. *Morris,* 714 F.2d at 673. Nor do "personality conflicts and disagreements over trial strategy" constitute grounds for reversible error. *Hillsberg,* 812 F.2d at 333–34 (quoting *United States v. Davis,* 604 F.2d 474, 479 (7th Cir.1979)). Here, the magistrate found that the communication barrier that existed between Horton and Callaway was primarily the result of Horton's refusal to cooperate with his counsel and his "stonewalling" effort to select counsel of his own choice. The magistrate also explained fully to Horton that Callaway could not force him to plead guilty and that he had the right to go to trial if he so desired. Horton indicated that he understood. Under these circumstances, we cannot say that the magistrate abused his discretion in denying Horton's motion to substitute counsel. It is a meritless issue.

■ Horton next argues that Callaway's position as a finalist for the Office of United States Attorney during the time that he represented Horton constituted, as a matter of law, an actual conflict of interest. That conflict, he argues, deprived him of his Sixth Amendment right to counsel entitling him to reversal of his conviction.

Normally, a defendant alleging ineffective assistance of counsel under the Sixth Amendment must show not only that his counsel's performance fell below minimum professional standards, but also that his counsel's failure was so prejudicial that it probably changed the outcome of his trial. *Strickland v. Washington,* 466 U.S. 668, 691–96, 104 S.Ct. 2052, 2066–69, 80 L.Ed.2d 674 (1984); *United States ex rel. Duncan v. O'Leary,* 806 F.2d 1307, 1312 (7th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1982, 95 L.Ed.2d 822 (1987). Where a conflict of interest provides the predicate for an ineffective assistance claim, however, a defendant bears a lighter burden with regard to demonstrating prejudice. *Walberg v. Israel,* 766 F.2d 1071, 1075 (7th Cir.1985), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985); *United States v. Marrera,* 768 F.2d 201, 205 (7th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 321 (1986). If a defendant or his attorney gives the trial court notice of the alleged conflict and the trial court fails to inquire into the conflict, a reviewing court will presume prejudice upon a showing of possible prejudice. *Holloway v. Arkansas,* 435 U.S. 475, 484–91, 98 S.Ct. 1173, 1178–82, 55 L.Ed.2d 426 (1978); *Walberg,* 766 F.2d at 1075; *Marrera,* 768 F.2d at 205. If however, the trial court has not been given notice of the alleged conflict, the defendant must show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348–49, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980); *Marrera,* 768 F.2d at 205–06; *Walberg,* 766 F.2d at 1075.

■ Horton argues that we should apply the *Holloway* standard because he believes that his motion for substitution of counsel sufficed to put the magistrate on notice of the alleged conflict of interest. In support of this contention, Horton cites our decision in *Dently v. Lane,* 665 F.2d 113, 117 (7th Cir.1981), *later appeal,* 712 F.2d 1172 (7th Cir.1983), *vacated,* 720 F.2d 472 (7th Cir. 1983). In that case, we suggested that a defendant's attempt to "fire" his public defender may have been sufficient to put

the trial court on notice of a possible conflict of interest resulting from the public defender's simultaneous representation of Dently's codefendant. *Dently*, however, presents a case where the trial court could have been alerted automatically to the potential for a conflict of interests because it was known to all involved that the public defender's office was representing both defendants. In Horton's case, however, even assuming that being considered for the position of United States Attorney created a conflict, there is no indication that either the magistrate or Horton himself was aware of Callaway's position as a finalist for United States Attorney. The mere fact that counsel and defendant were having communication difficulties could not have alerted the magistrate to the alleged conflict that Horton now claims existed.

We therefore analyze Horton's ineffective assistance claim under the standard set forth in *Cuyler*. Under this approach, the defendant must demonstrate as a threshold matter that there was an actual conflict of interest—that is, that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests. *Marrera*, 768 F.2d at 207. *See also Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3rd Cir.1984) (actual conflict exists where interests of defendant and counsel diverge). Unless a defendant can show such active representation of conflicting interests by his attorney, "he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719 (citing *Glasser v. United States*, 315 U.S. 60, 72–75, 62 S.Ct. 457, 465–67, 86 L.Ed. 680 (1942)). Here, Horton argues that the fact of Callaway's serious candidacy for the position of United States Attorney is, in and of itself, an actual conflict of interest as a matter of law and that we should therefore presume that it adversely affected Callaway's performance. It is not claimed that Callaway attempted to deliberately keep the information about his possible appointment from his client. We will not indulge the presumption that a defense attorney who is being considered for a position as United States Attorney is unable to represent a defendant in federal court to the best of his ability and with the defendant's best interests in mind.

■ We note that Callaway's candidacy was not a secret. An April 28, 1987 article in the Wisconsin State Journal reported that Callaway and three others were finalists in the selection process. Even though it might have been advisable for Callaway to have informed the court and his client of his possible future employment, any failure to do so by no means gives rise to the presumption that, in total disregard of his professional responsibilities, his representation of Horton therefore was adversely affected. In those cases where courts have presumed that the adequacy of representation was adversely affected, a lawyer has been involved in a conflict of interest with the client "which is always real, not simply possible, and which, by its nature, is so threatening to justify a presumption that the adequacy of representation was affected." *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984). *Cancilla* involved a conflict where the defendant was represented by trial counsel who, unknown to the defendant, was himself involved in criminal activity related to that for which the defendant was convicted. The *Cancilla* court found that trial counsel's potential criminal liability created an actual conflict and further presumed adverse effect on the adequacy of representation because there was no doubt that counsel's primary interest was in ensuring that his role in a related offense would not be divulged. *Id. See also Government of Virgin Islands v. Zepp*, 748 F.2d at 136 (actual conflict existed where defense counsel could have been indicted on the same charges on which he represented defendant).

■ By contrast, this case presents at most a remote possibility of a conflict of the type with which *Cuyler* was concerned. *See Cancilla*, 725 F.2d at 870. Though it is conceivable that an unprincipled defense attorney in line for a job as United States Attorney might encourage a defendant in some circumstances to plead guilty in order for counsel to curry favor with his or her

future employer, that is too fanciful upon which to base a *per se* rule of conflict. Callaway was seeking the position of United States Attorney, a high position of great responsibility which involves appointment by the President of the United States and confirmation by the Senate. There was no one known in the local United States Attorney's office with whom Callaway could have "curried favor" and advanced his appointment. Nor was this case a high-publicity criminal prosecution in which there was public interest, or anything else which would attract the attention of those involved in the selection and confirmation process. In any event, a candidate for a high federal position in his professional field would not advance his own interests by demonstrating that he is a weak or unskilled attorney on behalf of his client's interests. We do not believe that the fact of Callaway's unsuccessful candidacy for United States Attorney, in and of itself, gave rise to a conflict of interest as a matter of law. This United States Attorney position argument appears to be nothing but an afterthought.

In *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987), we held, however, that a conflict of interest existed where counsel advised the defendant to plead guilty to avoid "making waves" with federal prosecutors with whom counsel would be working in the future. In *Ellison* defense counsel had as much as acknowledged the conflict of interest during the course of a hearing on defendant's motion to vacate his plea. *Id.* By contrast, Horton cannot point to any evidence that would substantiate his claim that Callaway's advice to plead guilty was motivated by his interest in the United States Attorney's position. In fact, the record reflects that Callaway recommended that Horton accept the plea agreement offered by the government because he felt that it was an extremely fair one, particularly in light of the strength of the government's case. In sum, there simply is no support in the record to suggest that this alleged conflict of interest ever became reality. Unable to demonstrate that Calla-

way actively represented conflicting interests, Horton has not "established the constitutional predicate for his claim of ineffective assistance." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719.

Horton next argues however, that even if Callaway's vying for the position of United States Attorney did not create an actual conflict as a matter of law, his conduct during the course of his representation demonstrated that there was in fact a conflict that adversely affected Callaway's performance. Horton maintains that Callaway "pulled his punches" at every phase of the proceedings, that he filed no substantive motions, did no substantive research, performed no independent investigation or trial preparation and failed to submit a jury instruction regarding a theory of defense. Instead, Horton maintains, Callaway continuously pressed Horton to enter a guilty plea, but Callaway's lack of preparation and diligence in preparing the case precluded him from recommending a knowing and intelligent plea to Horton. These are all serious charges to make against a member of the legal profession which, if true, could possibly entitle a defendant to withdraw his guilty plea.

■ The record in this case clearly establishes however, that even assuming a potential conflict presented itself, there clearly was no adverse affect on Callaway's performance. On the contrary, we are convinced that Callaway made the best of a bad situation. The record of the *ex parte* hearing reveals that Callaway was faced with a recalcitrant client who refused to cooperate with his counsel or the magistrate. He provided Callaway with no assistance or information that would lead to a plausible defense. Though Callaway did designate instructions to be used in the event of trial, he could hardly be expected to tender a theory of defense instruction where it appears no valid theory of defense existed. Nor was he required to file any discovery motions when he had already received the government's file. Based on the discovery materials Callaway did receive, the government's case against Horton appeared to have been overwhelming. Calla-

way recommended that Horton accept the plea bargain offered by the government in order to avoid a potentially heavy sentence. Without the bargain, Horton risked conviction on all five counts. Even on the one count to which he pled, Horton faced a potential term of imprisonment of not more than 30 years and a fine of not more than $250,000, had it not been for the terms of the plea agreement under which he could expect something considerably less. Under these circumstances, Horton is hard-pressed to argue that Callaway's performance was in any way deficient.

No defense counsel, with or without a conflict, could have done better for Horton. It is no deficiency of defendant's counsel that his client's long criminal record also suggested he not testify in his own defense. It is no deficiency of defendant's counsel that Horton had no defense. It is no deficiency of defendant's counsel that he did not manufacture a defense for him. It is no deficiency of defendant's counsel that he did not file unnecessary motions of some sort to satisfy Horton. We do not judge defendant's counsel's performance by the variety of motions copied from a form book. It is no deficiency of defendant's counsel that he did not investigate when there was nothing to investigate. It is no deficiency of defendant's counsel that he recommended a plea bargain and avoided almost certain conviction on all counts and additional sentences. If there was something defendant's counsel should have done for Horton which he did not do it is as obscure to us as it must have been to Callaway.

At the sentencing Horton, under oath, told the district judge that he was satisfied with Callaway, was not pressured to plead guilty and was in fact guilty of the charge. Now he has changed his mind again and seeks to vacate his guilty plea and go to trial. In doing so he risks the reinstatement of the counts dismissed as part of the bargain, and risks the greater punishment that might result. He might wish then that Callaway was still representing him. Horton continues to "stonewall." Horton was also well represented in this appeal and the unsatisfactory result for Horton in this appeal is not the fault of defendant's appellate counsel; like Callaway, they have done the best they could with what they had.

There is nothing in this record to require a remand for an evidentiary hearing on any of these issues. The record is sufficiently developed for us to conclude that no conflict of interest adversely affected his counsel's performance.

## REIMBURSEMENT OF COSTS

Finally, Horton appeals the magistrate's order that he pay $1,500 toward the cost of his defense pursuant to the Criminal Justice Act, 18 U.S.C. §§ 3006A(c) and (f), because he maintains that he does not have the available funds. The government has stated in its brief that it does not object to our releasing Horton from his obligation to pay. There is a suggestion in the record that Horton's family problems have depleted whatever assets he formerly had and being confined he has not been able to earn an income. We therefore vacate the magistrate's order that Horton pay $1,500 toward his defense.

## CONCLUSION

For the foregoing reasons, we affirm Horton's conviction. The order assessing $1,500 against Horton toward the cost of his defense is vacated.