UNITED STATES of America, Plaintiff–Appellee,

v.

Bernard A. FISH, Defendant–Appellant.

No. 93–2849.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1994.

Decided Sept. 2, 1994.

Stephen A. Ingraham, Asst. U.S. Atty. (argued), Milwaukee, WI, for plaintiff-appellee.

Karl Mueller, Derek Brown (argued), Brown & Mueller, Madison, WI, for defendant-appellant.

Before ESCHBACH, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Bernard Fish and Russell Gulmire were charged in a one-count indictment with bank robbery in violation of 18 U.S.C. § 2 and § 2113(a). Mr. Gulmire pleaded guilty and agreed to testify against Mr. Fish. Following a five-day jury trial, Mr. Fish was convicted and sentenced to 230 months' imprisonment. In this appeal, Mr. Fish challenges the adequacy of his trial counsel's represen-

tation. For the reasons that follow, we affirm the judgment of the district court.

## I

### BACKGROUND

On December 11, 1992, two men carrying pellet guns robbed the First Northern Savings Bank of Green Bay, Wisconsin of $5,598.00. The robbers were described as being either Hispanic or American Indian. Mr. Fish is Native American and Mr. Gulmire, having just returned from Florida, was tanned at the time. The robbers fled the scene, but left a trail of footprints and tire tracks. Approximately an hour after the robbery, Mr. Fish was seen spending money freely at the Paper Valley Hotel in Appleton, Wisconsin. He called his ex-wife in Green Bay and promised to give her money for their children's Christmas presents if she would visit him in Appleton that night. The next day, he and Mr. Gulmire travelled to Milwaukee and then onto Chicago where the two parted ways. Mr. Gulmire was arrested when he returned to Milwaukee to retrieve Mr. Fish's car. He implicated Mr. Fish in the robbery, which lead in turn to Mr. Fish's arrest.

Mr. Fish's attorney, Charles Koehn, informed the Assistant United States Attorney (AUSA) assigned to the case that, sometime in early 1992, he had been approached by Mr. Gulmire about working as an informant for local law enforcement. Attorney Koehn stated that he had arranged for Mr. Gulmire to meet with individuals from the Brown County Drug Metro unit. The AUSA then questioned Mr. Gulmire, who confirmed that with Attorney Koehn's help he had secured a position as a paid confidential informant with the multi-jurisdictional drug unit. Apparently while serving as an informant, Mr. Gulmire had attempted to engage Mr. Fish in illegal drug activity. Mr. Gulmire also stated that he had consulted with Attorney Koehn regarding some traffic-related charges, although he never formally retained Mr. Koehn. Finally, on one occasion, Attorney Koehn paid Mr. Gulmire to move some furniture at his residence and afterwards the two had drinks together.

On the basis of this information, the government moved to disqualify Attorney Koehn on the ground that Mr. Koehn possessed privileged information that might be helpful in impeaching Mr. Gulmire's credibility. In response, Attorney Koehn filed an affidavit in which he denied the existence of an attorney-client relationship or the exchange of any confidential information. The court held a hearing to investigate the potential conflict of interest. All parties, including the defendant, were present. Mr. Koehn again assured the court that he did not possess any confidential information concerning Mr. Gulmire. The government confirmed that Mr. Koehn had never appeared as the attorney of record on any action pertaining to Mr. Gulmire, and stated that it therefore "no longer believed that there was necessarily cause for disqualifying him." As a precautionary measure, however, the government requested that the court inform Mr. Fish on the record of his counsel's prior contact with Mr. Gulmire and ask him to waive any potential conflict of interest that might arise out of that relationship. The district court rejected the government's suggestion and denied the motion to disqualify as frivolous and without foundation.

At trial, Mr. Fish presented an alibi defense that he was in Appleton to deliver drugs at the time the bank robbery occurred in Green Bay. Mr. Gulmire's testimony—that together he and Mr. Fish had committed the robbery—was the key evidence against the defendant. The only other direct evidence was the rebuttal testimony of Sandra Mikkelson, one of the bank tellers and the government's first witness in its case in chief, who offered identification testimony previously unknown to defense counsel. On the evening of the third day of trial, Ms. Mikkelson informed the prosecutor that, while watching the trial from the back of the courtroom, she noted that the posterior build of the defendant was similar to that of the bank robber. She also produced an essay that she had written shortly after the robbery in which she expressed her belief that the man behind the teller counter during the robbery was either Hispanic or American Indian. Over defendant's objection, this evidence was

admitted. Following the close of all evidence, the jury returned a guilty verdict against Mr. Fish.

At sentencing, Mr. Fish claimed that he was unaware of his attorney's prior consultations with the codefendant until after trial. He stated that, had he known of these matters, he would not have retained Mr. Koehn. Mr. Koehn informed the court, however, that he had more than once discussed the extent of his prior consultation with Mr. Fish and that the defendant wanted counsel to continue to represent him. The district court then took the opportunity to comment on his observation of counsel's performance during the trial; in the court's view, Mr. Koehn had provided very able assistance to the defendant.

## II

## ANALYSIS

Represented by new counsel on appeal, Mr. Fish submits that his trial counsel's representation was constitutionally ineffective in three respects. First, he argues that, owing to prior contacts with Mr. Gulmire, his trial counsel labored under a conflict of interest. Second, he states that, even absent any conflict of interest, his trial counsel failed to

cross-examine Mr. Gulmire adequately. Finally, he contends that his trial counsel should have requested a continuance to prepare for the cross-examination of the government's rebuttal witness. We shall address each issue in turn.

We note at the outset that, because counsel is presumed effective, a defendant bears a heavy burden in making out a successful ineffective assistance challenge. *United States v. Jimenez*, 992 F.2d 131, 134 (7th Cir.1993).[1] To do so, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. Second, a defendant must demonstrate that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068, that is to say, a defendant must show "that the deficient performance prejudiced the defense," that it "deprive[d] the defendant of a fair trial, a trial whose result is reliable," *id.* at 687, 104 S.Ct. at 2064. *See also Lockhart v. Fretwell*, —— U.S. ——, —— – ——, 113 S.Ct. 838, 842–43, 122

---

1. A defendant who raises an ineffectiveness claim on direct appeal without supplementing the record faces an even more arduous task, for without such evidence a seeming lapse or error by counsel will be presumed a tactical move " 'flawed only in hindsight.' " *United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir.1991) (quoting *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir.), *cert. denied*, 500 U.S. 927, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991)). Because evidence outside of the record will ordinarily be required to demonstrate the deficiency in counsel's performance, *Guinan v. United States*, 6 F.3d 468, 471 (7th Cir.1993), we are generally reluctant to consider claims of ineffective assistance of counsel raised for the first time on appeal. Because an appellate court does not hear evidence, but rather is restricted by the record before it, *Ashimi*, 932 F.2d at 648, the most the defendant can hope for on appeal is an opportunity to enlarge the record on remand. *United States v. Davenport*, 986 F.2d 1047, 1050 (7th Cir.1993). However, if nothing could be gained through evidentiary inquiry that is not already contained in the trial record, the defendant is required to raise the claim on direct appeal or forfeit it. *See Guinan*, 6 F.3d at 471;

*Taglia*, 922 F.2d at 418; *see also Dugan v. United States*, 18 F.3d 460, 464 (7th Cir.1994); *United States v. Kamel*, 965 F.2d 484, 495 n. 28 (7th Cir.1992). Thus, if the challenge to counsel's assistance is sufficiently clear-cut and can be conclusively determined from the trial record, we will consider the issue, even though the contention has not been squarely presented to the district court. *See Taglia*, 922 F.2d at 418; *see also United States v. Booker*, 981 F.2d 289, 292 (7th Cir.1992).

In this case, the challenges to Attorney Koehn's conduct are sufficiently circumscribed that they may be resolved solely on the basis of the trial record. We reach this conclusion in part because the conflict of interest claim was addressed at a hearing before the district court, and the record contains an affidavit from Mr. Koehn regarding this issue. When Mr. Fish first objected to his trial counsel's conduct at the sentencing hearing, the district court judge took the opportunity to comment on his assessment of counsel's trial performance. Moreover, when pressed at oral argument, counsel assured the court that his client desired that the matter be addressed at this stage.

L.Ed.2d 180 (1993); *United States v. Kamel*, 965 F.2d 484, 495 (7th Cir.1992). "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

■ However, if an ineffective assistance claim is premised on an alleged conflict of interest, "a defendant bears a lighter burden with respect to demonstrating prejudice." *United States v. Horton*, 845 F.2d 1414, 1418 (7th Cir.1988); *see also Crisp v. Duckworth*, 743 F.2d 580, 588 (7th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985) (stating that, in reviewing an ineffective assistance claim based on a conflict of interest, courts apply a "slightly easier prejudice standard"). "But for" prejudice need not be shown under these circumstances because the existence of a conflict itself demonstrates a denial of effective assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). "This presumption of prejudice is necessary because a true conflict of interest forecloses the use of certain strategies and thus the effect is difficult if not impossible to measure." *United States v. Ellison*, 798 F.2d 1102, 1107 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). As the *Strickland* Court stated:

> Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest.

466 U.S. at 692, 104 S.Ct. at 2067 (citation omitted).

■ The extent to which a defendant asserting a conflict of interest must demonstrate prejudice depends on whether and to what extent the alleged conflict was brought to the district court's attention. When the defendant raises the issue or the trial judge otherwise knows or reasonably should know of the possibility of a conflict of interest, the judge must inquire adequately into the potential conflict. Otherwise, "a reviewing court will presume prejudice upon a showing of possible prejudice." *Horton*, 845 F.2d at 1418. This approach was established in *Holloway v. Arkansas*, 435 U.S. 475, 484–91, 98 S.Ct. 1173, 1178–82, 55 L.Ed.2d 426 (1978), in which the Supreme Court reversed three convictions without reaching the issue of whether there was an actual conflict of interest. The Court determined that, because defense counsel timely objected to joint representation at trial, the trial court erred by failing "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." *Id.* at 484, 98 S.Ct. at 1178. The failure to take either step required automatic reversal. Thus, when a timely objection is made and the court fails to inquire adequately into the possibility of conflict, a reviewing court will presume prejudice, even without a showing of an actual conflict of interest. *See id.* at 484–91, 98 S.Ct. at 1178–82; *Horton*, 845 F.2d at 1418; *see also Selsor v. Kaiser*, 22 F.3d 1029, 1033 (10th Cir.1994); *Hamilton v. Ford*, 969 F.2d 1006, 1011 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1625, 123 L.Ed.2d 183 (1993). If, on the other hand, a court has not been sufficiently apprised of a possible conflict, a reviewing court will presume prejudice only if the defendant demonstrates that "counsel actively represented conflicting interests" and that the "conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *see also Cerro v. United States*, 872 F.2d 780, 784 (7th Cir. 1989); *Horton*, 845 F.2d at 1418.

In this case, the government raised the issue of a potential conflict of interest in its motion to disqualify Mr. Fish's trial counsel, Attorney Koehn. Based on the submissions and affidavits and the hearing testimony, the trial judge determined that no conflict of interest existed and denied the motion to disqualify. Mr. Fish now argues that the district court failed to examine a basis of potential conflict that was before the court—namely, the fact that, in March 1992, Mr. Koehn gave Mr. Gulmire $20.00 for moving some furniture at his residence and afterwards bought Mr. Gulmire a couple of drinks

at the local supper club. Mr. Fish therefore submits that, under *Holloway,* he is entitled to a presumption of prejudice. In response, the government contends that the trial court fulfilled its duty to inquire about the potential conflict, and that as a result the *Cuyler* conflict standard applies, which requires the existence of an actual conflict that adversely affected the performance of Mr. Fish's trial counsel.

The district court here took appropriate steps to ascertain the risk of the potential conflict of interest brought to its attention. In order to explore adequately the risk of a conflict of interest, a court must examine the facts and details of an attorney's interests to determine whether those interests diverge with those of the client, thereby compromising the adequacy of counsel's representation. *See United States v. Levy,* 25 F.3d 146, 153 (2d Cir.1994). The "alcohol matter" that Mr. Fish contends the district court did not address was presented to the court in conjunction with the disqualification motion initially raising the conflict issue. The court reviewed the submissions prior to the hearing and issued an order stating that there was no evidence to dispute defense counsel's affidavit, and that it therefore appeared that the issue was no longer contested. Despite the substantial amount of dispositive evidence received, the court held a hearing in order to allow the parties to determine more conclusively whether a conflict of interest existed and whether it might jeopardize the defendant's right to effective assistance. At the hearing, the government conceded that there was never a formal attorney-client relationship between Mr. Gulmire and Attorney Koehn, but it noted that the exchange of confidential information may occur even during an informal consultation. Mr. Koehn, however, testified that he was not privy to any information regarding Mr. Gulmire's service as a confidential informant for the Metro Drug Unit, and that any information he possessed concerning Mr. Gulmire was gained

from an independent investigation rather than from any prior consultation with Mr. Gulmire.

 On the basis of Attorney Koehn's representations, the trial court took no further steps to inquire into a possible conflict. Given defense counsel's duty to avoid conflicts of interest and to advise the court promptly upon discovery of a conflict, the trial court's reliance on defense counsel's own assessment regarding the potential for conflict was entirely reasonable. *See Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717. Indeed, it is the attorney confronted with a potential conflict who " 'is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' " *Holloway,* 435 U.S. at 485, 98 S.Ct. at 1173 (citation omitted); *see also United States v. Barnes,* 909 F.2d 1059, 1066 (7th Cir.1990); *United States v. Marrera,* 768 F.2d 201, 206 (7th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 321 (1986). Moreover, Mr. Fish has not pointed to any evidence supporting the existence of a conflict of interest. Nor does the record indicate that the alleged failure of the court to delve deeper into the alleged conflict resulted in its lacking any material information to make the conflict determination. *Cf. Hamilton,* 969 F.2d at 1012 (failing to consider new evidence and asking counsel to elaborate on effect of conflict which required inappropriate disclosure of trial strategy in open court was inadequate inquiry). Rather, the record here reveals that the district court took seriously its duty to inquire into the potential conflict. The court independently examined the evidence before it, which included the "alcohol matter," although the court did not happen to refer expressly to the matter on the record. Because the district court fulfilled its duty to explore adequately the potential conflict brought to its attention, we " 'cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.' "[2]

2. Having concluded, we think properly, that no conflict of interest existed, the court was under no further obligation to engage Mr. Fish in a colloquy to determine whether he was willing to waive any potential conflict that later might arise out of his counsel's prior associations with Mr.

Gulmire. *See Cerro,* 872 F.2d at 787 (stating that there is no need to discuss a potential conflict with the defendant when the court has ruled out the possibility of a conflict); *see also Levy,* 25 F.3d at 153 (stating that, if a conflict is revealed,

*Cerro,* 872 F.2d at 784 (quoting *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718).

Mr. Fish's next argument is that his attorney's failure to cross-examine Mr. Gulmire about his efforts as a confidential informant in targeting the defendant for illegal drug activity constituted ineffective assistance of counsel.[3] According to Mr. Fish, use of this information would have reduced Mr. Gulmire's credibility by portraying him as a "snitch" and predisposed to "point the finger" at the defendant. Mr. Fish contends that, because Mr. Gulmire implicated him in the robbery and because his only theory of defense was premised on an alibi, discrediting Mr. Gulmire's testimony was crucial to the success of his case.

■■■■ In considering this ineffective assistance claim, we must assess whether the decision of Mr. Fish's trial counsel not to question Mr. Gulmire about his efforts to engage Mr. Fish in drug trafficking " 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted). In doing so, we must look at the totality of the circumstances, keeping in mind that counsel's performance is presumed effective. *Jimenez,* 992 F.2d at 134. Although the line of questioning at issue may have reduced Mr. Gulmire's credibility, it could have bolstered his credibility by providing him an opportunity to reiterate his earlier testimony regarding his successful efforts in helping to secure numerous other convictions. It also may have served to portray the defendant as having a propensity toward criminal activity. To be sure, the jury's awareness of this propensity may not have hurt Mr. Fish a great deal because drug dealing was an integral part of his defense. Nevertheless, given the two opposing effects of this line of questioning, it was not unreasonable for counsel to have avoided the potential risk to his client.[4] *Kamel,* 965 F.2d at 497; *see also United States v. Balzano,* 916 F.2d 1273, 1295 (7th Cir.1990) (counsel's failure to provide one more conviction to impeach government witnesses had no effect on outcome); *cf. United States v. Booker,* 981 F.2d 289, 295 (7th Cir.1992) (had counsel not introduced fact that gun had been previously fired, it would not likely have affected outcome). Moreover, counsel conducted a thorough and rather vigorous cross-examination of Mr. Gulmire by attacking his credibility, by highlighting his inconsistencies, by emphasizing his drug habit and prior problems with the law, and by questioning his motivation to testify against the defendant. The totality of the evidence belies the possibility that counsel's failure to use this additional information to impeach Mr. Gulmire had any reasonable probability of altering the jury's verdict. *See Moffett v. Kolb,* 930 F.2d 1156, 1161 (7th Cir.1991) (stating that, under *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068, a court should consider "the totality of the evidence before the judge or jury" in determining whether there exists a reasonable probability of a different outcome).

■■■■ Finally, Mr. Fish contends that defense counsel's decision not to request a

---

the court is obligated to inquire whether disqualification or waiver is appropriate).

**3.** To the extent the appellant raises this argument to support a claim of an actual conflict of interest, we note that he can point to no evidence in the record to substantiate such a claim. This potential conflict was discussed prior to trial and determined not to give rise to a genuine conflict. Mr. Fish has provided us with no reason to disagree with the district court's conclusion in this regard.

**4.** The conclusion that Koehn's performance was not deficient is bolstered by the district court's statement following the jury's verdict that "I especially want to compliment defense counsel because I think you did a lot with what you had to work with." Again, at sentencing, the point at which Fish first raised objections to his trial counsel's conduct, the judge stated that "from the court's viewpoint at least, you were very ably represented by a very resourceful attorney who exhausted every available defense that you had in an effort to portray to this jury the image of an individual who was not at the scene and had not had any connection with the robbery, even in spite of some overwhelming evidence." Because the trial judge had the opportunity to observe counsel's performance during trial, he is in the best position to assess the overall performance and prejudice. *See Kamel,* 965 F.2d at 497 n. 36; *see also Guinan v. United States,* 6 F.3d at 473 (Easterbrook, J., concurring) (stating that the "trial judge is best situated to assess overall performance and prejudice"). The trial judge's insights, therefore, may assist this court in drawing conclusions from the written record.

continuance to investigate the proposed rebuttal evidence amounted to ineffective assistance. We disagree. The need for a continuance is determined by the particular facts of the case and addressed to the sound discretion of the district court. *United States v. Manos*, 848 F.2d 1427, 1434 (7th Cir.1988). Where a motion for a continuance would prove futile, failure to seek one cannot constitute ineffective assistance. *Kamel*, 965 F.2d at 498. It should be noted that defense counsel repeatedly objected to the admission both of the rebuttal testimony and of the written statement, but was overruled. Had counsel made a continuance motion on the fourth day of a five day trial, it is unlikely that he would have succeeded, particularly where adequate time had been given to review the limited information being introduced. *Manos*, 848 F.2d at 1434 (stating that it is not an abuse of discretion to deny a request for continuance made on second day of trial to review evidence received the previous day). Moreover, even if we assume *arguendo* that counsel's failure to seek a continuance was in some way deficient, the defendant has made no attempt whatsoever to demonstrate any resulting prejudice—most likely because, as our review of the record suggests, there was none. *Cf. United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991) (stating that self-serving speculation about testimony of putative witness is not enough to show how counsel's failure to obtain testimony was ineffective).

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.