**STATE OF LOUISIANA**

**VERSUS**

**ALBERT SCOTT A/K/A ALBERT JONATHAN SCOTT**

**\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**THIRTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF EVANGELINE, DOCKET NO. 98301-FB**
**HONORABLE CHUCK RANDALL WEST, PRESIDING**
**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Nicole F. Gil
Evangeline Parish District Attorney's Office
P.O. Drawer 780
Ville Platte, LA 70586
(337) 363-3438
**ATTORNEY FOR APPELLEE**
    State of Louisiana

Leo J. "Trey" Flynn, III
2820 Jackson Street
Alexandria, LA 71301
(318) 542-4102
**ATTORNEY FOR DEFENDANT/APPELLANT**
    Albert Scott

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On March 2, 2014, Defendant, Albert Scott, was driving down East Main Street in Ville Platte, Louisiana. According to Defendant, a vehicle in the other lane of traffic was driving erratically, swerving between lanes. In response to this, Defendant took a handgun and fired two shots. Both of those bullets went through the back windshield of the other vehicle, with one of the bullets lodging in the center console of the vehicle.

In his statement to the police, Defendant claimed that he felt threatened by the erratic driving of the other vehicle and was simply trying to warn him by firing the gun. He acted surprised that the shots he fired struck the vehicle, as he claimed that he "thought [he] just stuck [the gun] in the air and pulled the trigger."

On March 7, 2014, Defendant was charged by bill of information with attempted second degree murder, in violation of La.R.S. 14:30.1 and 14:27. At the arraignment on the charge of Attempted Second Degree Murder, the trial court appointed Alex Chapman, with the local Indigent Defender Board, to represent Defendant. At a later court appearance, Defendant requested the trial court appoint another attorney to represent him. The trial court granted the request, and Kelly Tate was appointed to represent Defendant.

On January 15, 2015, the State filed an amended bill of information, charging Defendant with attempted manslaughter, in violation of La.R.S. 14:31 and 14:27. On that same date, Defendant pled guilty to the reduced charge of attempted manslaughter without a sentencing recommendation or agreement.

Because the trial court failed to address Defendant's *Boykin* rights during the plea, his plea was vacated on January 21, 2015. At that time, Defendant again pled guilty to the charge of attempted manslaughter without any sentencing recommendation.

2

On May 21, 2015, Defendant was sentenced to ten years at hard labor with credit for time served. At the sentencing hearing, the trial court allowed Mr. Chapman to stand in for Ms. Tate, who was not available on that date. On July 23, 2015, Defendant was brought back for a second "sentencing" hearing so the trial court could inform Defendant of the two-year prescriptive period for filing post-conviction relief.

Thereafter, Defendant filed an appeal alleging his right to conflict-free counsel was violated when Mr. Chapman, his prior attorney with whom he allegedly had a conflict with, represented him at the sentencing hearing. This court remanded the case to the trial court for an evidentiary hearing at which the trial court was to determine whether there was an actual conflict between Defendant and Mr. Chapman such that resentencing was required or whether there was merely a personality conflict between the two. *State v. Scott*, 15-975, p. 1 (La.App. 3 Cir. 4/27/16) (unpublished opinion).[1]

The trial court held an evidentiary hearing on May 18, 2016, and found no actual conflict of interest with any legal import existed—only a personality conflict existed between the attorney and Defendant. An appeal record was subsequently lodged with this court, as ordered by this court in *Scott*. *Id.* Defendant now contends the trial court erred when it held an actual conflict of interest did not exist between Mr. Chapman and himself.

## ANALYSIS

In his only assignment of error, Defendant contends the trial court erred when it held that an actual conflict of interest did not exist between Attorney Alex Chapman and Defendant.

> As a general rule, Louisiana courts have held that an attorney laboring under an actual conflict of interest cannot render effective legal assistance to the defendant whom he is representing. *State v. Cisco*, 2001-2732 p. 17 (La.12/3/03), 861 So.2d 118, 129, *cert.*

---

[1]This opinion can be found by using Westlaw citation 2016 WL 1688475.

*denied*, 541 U.S. 1005, 124 S.Ct. 2023, 158 L.Ed.2d 522 (2004). An actual conflict of interest has been defined, as follows:

> If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interest of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to the other client.

> The issue of conflicting loyalties may arise in several different contexts, but may include the circumstance "where an attorney runs into a conflict because he or she is required to cross-examine a witness who is testifying against the defendant and who was or is a client of the attorney." *Cisco*, 2001-2732 p. 17, 861 So.2d at 129, *citing State v. Tart*, 1993-0772 p. 19 (La.2/9/96), 672 So.2d 116, 125, *cert. denied*, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996).

> If the issue of counsel's alleged conflict of interest is raised in a pretrial setting, the district court has two options: "appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. . . . Failure to do one or the other in a case in which an actual conflict exists requires reversal." *Cisco*, 2001-2732 p. 17, 861 So.2d at 130. If the issue of counsel's alleged conflict of interest is not raised until after trial, "the defendant must prove that an actual conflict of interest adversely affected his lawyer's performance." *State v. Kahey*, 436 So.2d 475, 484 (La.1983). Because the prejudice to the defendant may be subtle, even unconscious, "where the conflict is real, a denial of effective representation exists without a showing of specific prejudice." *Id.,* 436 So.2d at 485.

> The first step in the analysis of an alleged conflict of interest raised either pretrial or post-trial is whether an actual conflict of interest existed.

*State v. Reeves*, 06-2419, pp. 78-79 (La. 5/5/09), 11 So.3d 1031, 1081-82, *cert. denied*, 558 U.S. 1031, 130 S.Ct. 637 (2009) (footnotes omitted).

At the evidentiary hearing ordered by this court, Alex Chapman was called to testify. Mr. Chapman indicated he represented Defendant in a case in which he was charged with attempted second degree murder. Mr. Chapman was successful in getting Defendant's bond reduced from $200,000.00 to $75,000.00. Defendant then bonded out of jail. Defendant was late for a "probing date" that occurred a short time after the bond reduction hearing. Mr. Chapman testified that he called Defendant to inform him that he was late for court. Because Defendant was late,

4

the judge increased Defendant's bond to $200,000.00. According to Mr. Chapman, Defendant became angry and took that anger out on him. Mr. Chapman testified that he said, "[w]ell maybe it's best we let someone else handle it," and he gave the file to Kelly Tate. Mr. Chapman further indicated that he asked Defendant if he wanted another attorney, and Defendant said, "[y]es." Mr. Chapman subsequently testified Defendant murmured that he wanted another attorney. Mr. Chapman thought that if Defendant had another attorney it would make things smoother.

Ms. Tate represented Defendant through the negotiation of a plea agreement. Ms. Tate later went to work in the District Attorney's Office. Mr. Chapman explained that to Defendant and asked if Defendant had any problems with Mr. Chapman representing him "for the deal y'all made." Mr. Chapman testified Defendant said "no so then we entered the plea of guilty with me standing there standing in." Mr. Chapman further stated, "I asked if he had any problem and he said no so I jumped back in." An extensive sentencing hearing followed, and Mr. Chapman took it for granted that Defendant had no problem with Mr. Chapman representing him at that hearing. Mr. Chapman testified he had witnesses lined up for the hearing and was in contact with Defendant's wife "all this time" about lining up witnesses for the sentencing hearing. Mr. Chapman stated:

> [N]o one ever said anything that they didn't want me to represent him so we proceeded and we presented our litigating [sic] factors and the Court ruled and uh as I was still his trial attorney so I requested the Appellate Project to go ahead and take this up on appeal to [sic] because I saw an issue with his sentence versus the sentence that Seth Fontenot got in Lafayette.

Mr. Chapman indicated that at no time did Defendant say he did not want Mr. Chapman to represent him.

Mr. Chapman was asked if it was "really just [his] opinion that it was a personal conflict," and he replied, "I guess."

5

During the time Mr. Chapman initially represented Defendant, he was running for City Judge. Mr. Chapman had informed Ms. Tate that, in light of the fact that he was running for City Judge and Defendant was mad at him, he thought it was best that she take over the case. Questioning of Mr. Chapman continued as follows:

Q. But would you agree that if he knows you are running for City Judge and there's a miscommunication that he may feel, it's not personal, he just may feel that you [sic] spending more time running for City Judge than you are handling his case?

A. Well if it actual [sic] would have gone to trial that could have been an issue but as far as just handling as a plea matter.

Q. But what I'm saying instead of it being a personal conflict because you keep referring to it as he's mad about the bond but what I'm saying is you [sic] running for City Judge and you [sic] sitting in Mr. Scott's position. Would you agree that it wouldn't from Mr. Scott's prospective it wouldn't be personal it would be more of a listen he's running for City Judge that's where his focus is on right now. We had a miscommunication it's cost my bond and I think it's because of his time that he is spending running for City Judge. Would that be a fair assessment where that way it's not a personal conflict? It's a legitimate where he feels that there's a conflict with you running for Judge and trying to represent him in this matter.

A. At that particular time, yes but at the time that the plea was taken and the sentence I had lost the election and was back to being Indigent Defender so it wasn't an issue anymore.

Q. Were you running for City Judge when you came in on the Probing where bond was brought back up?

A. Yes.

Q. Okay so when that happened he could have felt like you spent more time working on City Judge may not been [sic] looking at the file?

A. Maybe so.

Q. And that would have been a personal conflict?

A. Correct.

Mr. Chapman did not owe a duty to another person at the time of the sentencing hearing that would be detrimental to Defendant.

6

Defendant also testified at the hearing. He stated he was arrested for drive-by shooting, bonded out of jail, and remained out of jail one day. The day after he was released from jail, he was called by the "DA" and asked to "come back that he wanted to revoke my bond." At that time, Defendant was introduced to Mr. Chapman. They subsequently went into court, and the State informed the judge that the charges had been upgraded to attempted second degree murder.

Defendant claimed he met with Mr. Chapman three or four times, but Mr. Chapman never went through Defendant's file with him. However, Mr. Chapman did give him a copy of the file. Mr. Chapman called Defendant at home one morning at 11:00 a.m. and told him he was supposed to be in court at 9:00 a.m. When Defendant arrived in court, the judge informed him that a bench warrant had been issued. Defendant testified he informed the judge he was unaware he was scheduled to be in court that day. Defendant subsequently fired Mr. Chapman, believing he was not getting proper representation.

The minutes of court for January 21, 2015, indicated Defendant was present in court and represented by Ms. Tate. At that time, his plea of January 15, 2015, was withdrawn. Defendant informed the court that he intended to plead "straight up" to attempted manslaughter. Defendant was *Boykinized* and entered a plea of guilty. The court ordered a pre-sentence investigation report be completed within sixty days, and sentencing was set for April 16, 2016.

Defendant appeared for sentencing and was told by Mr. Chapman that he was to represent Defendant, as Ms. Tate had gone to work in the district attorney's office. Defendant stated Mr. Chapman told him that nothing could be changed or added, that Defendant needed representation, that Mr. Chapman represented him, and that Mr. Chapman was just going to sit in the courtroom. Defendant claimed this meeting happened five minutes before the two went into court.

Defendant testified that he did not have any personal issues with Mr. Chapman and said Mr. Chapman was a nice guy. However, he felt there was a conflict because Mr. Chapman was spending more time campaigning for judge than representing him. Defendant never mentioned Mr. Chapman's running for office to him. Additionally, he did not feel there was a personal conflict.

When asked if he told the court at sentencing that he wanted another attorney, Defendant replied: "I didn't think there was anything wrong with it ma'am." Defendant testified that he did not know he could object, and he would have had he known.

After hearing the testimony of Mr. Chapman and Defendant, the trial court issued the following ruling:

> The Third Circuit in KA15975 says the issue in this case is if there was an actual conflict between the defendant and Mr. Chapman or was there simply a personality conflict. If a defense attorney owes a duty to a party whose interest are adverse to those of the defendant then an actual conflict exist. That's the law State versus Cisco and also that the law as now contained in State versus Albert Scott the Third Circuit is defending him. Mr. Chapman denies that he owed a duty to any person other than Mr. Scott at either the original hearing that when he was representing at the beginning of the case and/or at the sentencing hearing. Therefore this court finds that no actual conflict existed that it was a lack of better terms, a personality issue between Mr. Chapman and Mr. Scott. That is my finding.

In brief to this court, Defendant contends that Mr. Chapman withdrew from his case because Mr. Chapman was campaigning for city judge, and Defendant felt Mr. Chapman was not giving the proper time to his case. Defendant argues because of the previous withdrawal there is a presumption that Mr. Chapman's representation was ineffective or at least not conflict-free. Thus, Mr. Chapman should not have represented him at sentencing. In support of his claim, appellate counsel cites *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), and addresses the factors for ineffective assistance of counsel set forth therein.

8

Defendant admits this case does not present a situation wherein counsel represented multiple co-defendants. He alleges the conflict arose because Mr. Chapman was campaigning for an elected office during the time Mr. Chapman represented him. Defendant cites *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708 (1980), and asserts the ruling therein is not restricted to cases wherein an attorney represents more than one co-defendant. Defendant cites the following from *Cuyler*: "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. "Our cases make clear that every defendant has a constitutional right to 'the assistance of an attorney unhindered by a conflict of interests. *Holloway v. Arkansas*, 435 U.S. 475, 483, n. 5, 98 S.Ct. 1173, 1178, n. 5, 55 L.Ed.2d 426 (1978)." *Id.* at 355. Defendant argues this court should consider the rule "once a conflict, always a conflict."

Defendant avers he demonstrated an actual conflict existed and that Mr. Chapman did not adequately prepare for sentencing. Defendant further maintains that at the sentencing hearing he responded "no" when asked by Mr. Chapman if he wanted to be represented by him. In conclusion, Defendant asks that he be given a new sentencing hearing.

The State asserts Defendant has not demonstrated an actual conflict existed during the time Mr. Chapman represented him. Additionally, nothing in the record, besides Mr. Chapman's running for office, demonstrated that his loyalties were divided. Furthermore, Mr. Chapman was not running for office at the time Defendant was sentenced. The State claims there was merely a personality conflict between Defendant and Mr. Chapman.

In *State v. Gorman*, 11-491, p. 13 (La.App. 5 Cir. 2/14/12), 88 So.3d 590, 599, the fifth circuit held:

We find no merit to defendant's argument that he was entitled to new counsel because of a conflict of interest. Defendant contends a conflict arose when he filed a motion to appoint new counsel. Defendant's mere dissatisfaction with his appointed counsel does not create an actual conflict of interest that requires appointment of other counsel. Furthermore, there is no evidence defense counsel had an actual conflict of interest. The record does not show defense counsel was simultaneously representing defendant and a State witness, nor does the record show that defense counsel was required to cross-examine a witness who was testifying against defendant and who was a client of the attorney.

In *State v. LeBlanc*, 10-1484, p. 23 (La.App. 4 Cir. 9/30/11), 76 So.3d 572, 587, *writ denied*, 11-2300 (La. 11/18/11), 75 So.3d 446, the fourth circuit stated: "As for the alleged conflict of interest, it appears that what the defendant refers to as a conflict of interest was his disagreement with one more of Mr. Jenkins [sic] defense strategies. The defendant offers no authority for the proposition that such disagreement equates to a conflict of interest." The court further stated: "That the defendant may have disagreed with Mr. Jenkins's defense strategy or strategies does not equate to conflicting loyalties." *Id.* at 588.

In *United States v. Horton*, 845 F.2d 1414 (7th Cir.1988), defendant claimed the magistrate erred in denying his request for substitution of counsel because there was an irreconcilable conflict between defendant and his court-appointed attorney. He also argued that his attorney's publicly reported position as one of the finalists under consideration for nomination by the President of the United States for the Office of United States Attorney for the Western District of Wisconsin during the time he represented defendant constituted an actual conflict of interest in violation of his right to effective assistance of counsel. He further alleged that counsel's lack of preparation and investigation resulted in ineffective assistance of counsel.

The Seventh Circuit noted that, at an ex parte hearing, defendant "vaguely-voiced distrust" of counsel. *Id.* at 1418. The court concluded:

> We have held that the denial of a motion to substitute alleging only "ethereal distrust" of counsel is not reversible error. [*United States v.*] *Morris*, 714 F.2d [669] at 673 [(7th Cir.1983)]. Nor do "personality

conflicts and disagreements over trial strategy" constitute grounds for reversible error. [*United States v.*] *Hillsberg*, 812 F.2d at [328] 333-34 [ 97th Cir.1987)] (quoting *United States v. Davis*, 604 F.2d 474, 479 (7th Cir.1979)). Here, the magistrate found that the communication barrier that existed between Horton and Callaway was primarily the result of Horton's refusal to cooperate with his counsel and his "stonewalling" effort to select counsel of his own choice. The magistrate also explained fully to Horton that Callaway could not force him to plead guilty and that he had the right to go to trial if he so desired. Horton indicated that he understood. Under these circumstances, we cannot say that the magistrate abused his discretion in denying Horton's motion to substitute counsel. It is a meritless issue.

*Id.* Defendant further argued the court should have been put on notice of the conflict of interest by his motion to substitute counsel. The court determined defendant must demonstrate there was "an actual conflict of interest—that is, that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *Id.* at 1419.

Here, Horton argues that the fact of Callaway's serious candidacy for the position of United States Attorney is, in and of itself, an actual conflict of interest as a matter of law and that we should therefore presume that it adversely affected Callaway's performance. It is not claimed that Callaway attempted to deliberately keep the information about his possible appointment from his client. We will not indulge the presumption that a defense attorney who is being considered for a position as United States Attorney is unable to represent a defendant in federal court to the best of his ability and with the defendant's best interests in mind.

We note that Callaway's candidacy was not a secret. An April 28, 1987 article in the Wisconsin State Journal reported that Callaway and three others were finalists in the selection process. Even though it might have been advisable for Callaway to have informed the court and his client of his possible future employment, any failure to do so by no means gives rise to the presumption that, in total disregard of his professional responsibilities, his representation of Horton therefore was adversely affected. In those cases where courts have presumed that the adequacy of representation was adversely affected, a lawyer has been involved in a conflict of interest with the client "which is always real, not simply possible, and which, by its nature, is so threatening to justify a presumption that the adequacy of representation was affected." *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984). *Cancilla* involved a conflict where the defendant was represented by trial counsel who, unknown to the defendant, was himself involved in criminal activity related to that for which the defendant was convicted. The *Cancilla* court found that trial counsel's potential criminal liability created an actual conflict and further

11

presumed adverse effect on the adequacy of representation because there was no doubt that counsel's primary interest was in ensuring that his role in a related offense would not be divulged. *Id. See also Government of Virgin Islands v. Zepp*, 748 F.2d at 136 (actual conflict existed where defense counsel could have been indicted on the same charges on which he represented defendant).

By contrast, this case presents at most a remote possibility of a conflict of the type with which *Cuyler* was concerned. *See Cancilla*, 725 F.2d at 870. Though it is conceivable that an unprincipled defense attorney in line for a job as United States Attorney might encourage a defendant in some circumstances to plead guilty in order for counsel to curry favor with his or her future employer, that is too fanciful upon which to base a *per se* rule of conflict. Callaway was seeking the position of United States Attorney, a high position of great responsibility which involves appointment by the President of the United States and confirmation by the Senate. There was no one known in the local United States Attorney's office with whom Callaway could have "curried favor" and advanced his appointment. Nor was this case a high-publicity criminal prosecution in which there was public interest, or anything else which would attract the attention of those involved in the selection and confirmation process. In any event, a candidate for a high federal position in his professional field would not advance his own interests by demonstrating that he is a weak or unskilled attorney on behalf of his client's interests. We do not believe that the fact of Callaway's unsuccessful candidacy for United States Attorney, in and of itself, gave rise to a conflict of interest as a matter of law. This United States Attorney position argument appears to be nothing but an afterthought.

In *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986), *cert. denied*, [479] U.S. [1038], 107 S.Ct. 893, 93 L.Ed.2d 845 (1987), we held, however, that a conflict of interest existed where counsel advised the defendant to plead guilty to avoid "making waves" with federal prosecutors with whom counsel would be working in the future. . . . Unable to demonstrate that Callaway actively represented conflicting interests, Horton has not "established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719.

*Id.* at 1419-20.

After reviewing the cases cited herein and the transcript of the hearing held on May 18, 2016, we find Defendant failed to prove there was an actual conflict of interest between Mr. Chapman and himself. Accordingly, Defendant's conviction and sentence are affirmed.

## DECREE

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**