**Manuel Contreras QUINTERO, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 93–16699.

United States Court of Appeals, Ninth Circuit.

Submitted July 21, 1994 *.

Decided Aug. 29, 1994.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed.

R.App.P. 34(a); 9th Cir.R. 34–4.

Manuel Contreras Quintero, Tucson, AZ, for petitioner-appellant.

William R. Stevens, Jr., Asst. U.S. Atty., Tucson, AZ, for respondent-appellee.

Before: CHOY, SKOPIL and FERGUSON, Circuit Judges.

PER CURIAM:

■ This opinion is being published to alert trial judges, particularly in drug cases, to determine whether or not third parties are paying the fees of retained counsel when the defendant is indigent and, if so, whether the defendant understands the potential conflict of interest that may exist in such an arrangement and voluntarily waives that conflict.

Manuel Contreras Quintero was convicted of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii)(II), and conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. § 846. He was sentenced to prison for 20 years on each count to run concurrently.

Quintero filed a motion in the district court under 28 U.S.C. § 2255 to vacate his sentence alleging ineffective assistance of counsel. Apparently after his arrest Quintero was represented by counsel appointed by the court. Then two privately retained attorneys were substituted as co-counsel for Quintero.[1]

Quintero claims that there was a conflict of interest because his attorney was paid by an unknown third party. The district court denied the motion without conducting an evidentiary hearing. We reverse and remand for a hearing.

Quintero asserts that the district court erred by denying his motion without holding an evidentiary hearing. 28 U.S.C. § 2255 requires a district court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The movant must "make specific factual allegations which, if true, would entitle him to relief." *United States v. Keller,* 902 F.2d 1391, 1395 (9th Cir.1990) (quoting *Baumann v. United States,* 692 F.2d 565, 571 (9th Cir.1982)). The district court should have held a hearing unless Quintero's allegations of ineffective assistance of counsel, when viewed against the record, either did not state a claim for relief or were "so palpably incredible or patently frivolous as to warrant summary dismissal." *Marrow v. United States,* 772 F.2d 525, 526 (9th Cir.1985) (quoting *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984) (per curiam).

■ To establish a Sixth Amendment violation of defendant's right to the effective assistance of counsel based on an attorney's conflict of interest, "a defendant must show: (1) his attorney actively represented conflict-

ing interests, and (2) an actual conflict of interest affected his attorney's performance." *Fitzpatrick v. McCormick,* 869 F.2d 1247, 1251 (9th Cir.), *cert. denied,* 493 U.S. 872, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989). Quintero's § 2255 motion offered sufficient evidence under this test to warrant an evidentiary hearing.

### 1. Conflict of Interest

■ *Fitzpatrick* requires the defendant to show that the attorney actively represented conflicting interests. Third-party fee arrangements arguably create such a conflict. In *Wood v. Georgia,* 450 U.S. 261, 268–69, 101 S.Ct. 1097, 1101–02, 67 L.Ed.2d 220 (1981) (footnotes omitted), the Supreme Court noted that there are

> inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest.

Quintero explains that neither he nor his family retained his counsel and that the attorney herself would not, or could not, identify the person who retained her.

A drug conspiracy case involving large quantities of cocaine, fees paid by unknown third parties, and the potential for unindicted co-conspirators may be sufficient to demonstrate active representation of conflicting interests. Thus, Quintero passed the first prong of *Fitzpatrick.*

### 2. Conflict Affected Attorney's Performance

In order to satisfy the second requirement of *Fitzpatrick* Quintero offers two examples of how his attorney's conflict of interest affected her representation. The first is her failure to pursue a mistake defense and the second is her advice to reject a plea agreement.

---

1. It is not entirely clear what part one of the attorneys played in the trial. There is no mention of him in the record beyond his address and substitution. The other attorney made all of the appearances and representations and Quintero's allegations are directed entirely at her.

### a. *Mistake Defense*

▆ Quintero contends that his counsel's failure to introduce evidence demonstrating that Quintero thought that marijuana, not cocaine, was going to be stored on his property demonstrates how the conflict of interest affected the attorney's performance. This contention lacks merit.

This court has held that a defendant charged under 21 U.S.C. § 841 need not know "the exact nature of the substance with which he was dealing." *United States v. Lopez–Martinez*, 725 F.2d 471, 474 (9th Cir. 1983) (quoting *United States v. Davis*, 501 F.2d 1344, 1346 (9th Cir.1974)), *cert. denied*, 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). Instead, a defendant can be convicted under § 841 if he believes that he possessed some controlled substance. *United States v. Ramirez–Ramirez*, 875 F.2d 772, 774 (9th Cir.1989).

Thus, if Quintero's attorney offered evidence showing this mistake of fact, she would effectively have been proving Quintero's guilt.

Also, Quintero's mistake would not have had any impact on his sentencing. Once convicted of possessing a controlled substance the sentence is based on what was actually possessed, not what the defendant thought he possessed. *Id.* at 775.

Thus, Quintero's allegation that his attorney failed to raise this "mistake defense" does not state sufficient evidence to show that the conflict of interest affected her performance.[2]

### b. *Rejection of Plea*

▆ Quintero also contends that counsel's urging Quintero to reject the plea agreement evidenced that the conflict of interest affected counsel's performance. This contention has sufficient merit to warrant an evidentiary hearing.[3]

"[I]n a case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but *also as to pretrial plea negotiations.*" *United States v. Allen*, 831 F.2d 1487, 1497 (9th Cir.1987) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978)), *cert. denied*, 487 U.S. 1237, 108 S.Ct. 2907, 101 L.Ed.2d 939 (1988). "One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interests." *Wood*, 450 U.S. at 269, 101 S.Ct. at 1102 (footnote omitted).

In this case, the plea bargain may have been in Quintero's best interest. He claims that the government offered to recommend a 10 year sentence in exchange for a guilty plea. However, if the third party paying for Quintero's attorney was involved in the narcotics transaction, Quintero's guilty plea and cooperation with the government could have

---

**2.** Similarly, Quintero's claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) that a competent attorney would have pursued this defense also fails. First, given its implausibility, counsel's decision not to pursue this defense falls within the range of reasonably competent advice. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Second, Quintero cannot demonstrate that, but for the omission of this "defense," the result would have been different. *Id.* at 694, 104 S.Ct. at 2068.

**3.** This claim was not explicitly raised in Quintero's petition in the district court, although he did cite one case involving a failure to accept a plea agreement due to a conflict of interest. *See United States v. Rodriguez Rodriguez*, 929 F.2d 747 (1st Cir.1991).

While we may choose not to reach this issue, *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th

Cir.1990), we also may review it in order to prevent manifest injustice. *Intl. Union of Bricklayers & Allied Craftsman v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir.1985).

If in fact Quintero's counsel was paid by a drug supplier to assure that the supplier would evade prosecution, the injustice is manifest. Not only was the petitioner deprived of an attorney whose allegiance was solely to him, but, just as important, the court has been prevented by trickery from making certain that justice was accomplished. Justice and the Constitution cannot permit such a fraud upon the court or the litigants before it. For this court to reject petitioner's argument because it was not explicitly raised below would countenance fraud upon the judicial system.

implicated that person. *See e.g., Allen,* 831 F.2d at 1496–97. If that is the case, counsel's advice to reject a plea agreement could have been motivated by a desire to keep Quintero from implicating the fee payer. Quintero claims that the attorney stated, "I've never worked, and will not work, for a 'snitch,' am I working for one now?" Such a comment, if true, suggests that Quintero did not in fact have the undivided loyalty of counsel which is "perhaps the most basic of counsel's duties." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067.

### 3. *Conclusion*

Quintero's § 2255 motion alleged specific facts that "if true, would entitle him to relief." *Keller,* 902 F.2d at 1395 (quoting *Baumann,* 692 F.2d at 571). Therefore, the district court must hold an evidentiary hearing on the motion.

Accordingly, we REVERSE and REMAND.