. Maria E. CABELLO, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 98–1543.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1999.

Decided Aug. 18, 1999.

---

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

David C. Thomas (argued), Chicago–Kent College of Law, Chicago, IL, for Defendant–Appellant.

Before EASTERBROOK, KANNE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Just before Maria Cabello's trial on charges of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 began, a lawyer appeared and announced he was there to represent her. He did so, but Cabello was ultimately convicted and sentenced to 121 months in prison. She then brought a collateral attack on her conviction under 28 U.S.C. § 2255, claiming that she had received ineffective assistance of both appellate and trial counsel. The district court agreed with respect to appellate counsel and re-entered its judgment against her; it rejected her argument that a conflict of interest tainted the representation she received from trial counsel because the hidden benefactor who provided the trial lawyer was Cabello's former paramour, who was also the ringleader of the alleged conspiracy. We affirm.

## I

Maria Cabello and Gilberto Rodriguez–Corral lived together from 1984 until August 1991, when the police raided their home while investigating a drug distribution ring allegedly run by Rodriguez–Corral. Soon thereafter, Rodriguez–Corral vanished, and he has been a fugitive from justice ever since. Cabello, in contrast, was indicted by a federal grand jury (along with 13 others) in February 1992 for conspiring to distribute drugs. At trial, the government presented substantial evidence against Cabello, including $7,000 worth of heroin recovered during the August 1991 raid, quantities of cocaine and marijuana, packaging material, $234,000 in cash, drug sale ledgers recovered during an earlier raid of Cabello's home, and testimony by witnesses who saw Cabello deliver cocaine and accompany Rodriguez–Corral on drug buys.

After Rodriguez–Corral fled, Cabello had trouble supporting herself and her four children. Her financial straits hampered her ability to secure legal representation. She lost her first defense attorney because she could not afford to pay him. When it became clear that she would also be unable to pay her second attorney, Gregory Brown, he filed a motion seeking to be appointed by the court to represent her. On the very day the court was scheduled to rule on the appointment motion, Richard Nunez, an attorney from Brownsville, Texas, appeared in court and announced that he would be representing Cabello. (We note in passing that this lawyer's name is spelled Nunez throughout the record, not "Nuñez." We therefore have not used the letter "ñ" in his name in this opinion.) Nunez filed an appearance with the court and returned to Texas. Later, Dale Robertson, another lawyer from Nunez's firm, returned to represent Cabello at trial. Unbeknownst to the court, Cabello, and the prosecutor, Rodriguez–Corral was paying Nunez's firm to represent Cabello. It was not until after Cabello's trial that this information was brought to the court's attention.

Cabello's case proceeded to trial in August 1992. Although she testified on her own behalf, the jury chose to believe the government's account and found her guilty. After the verdict, the court permitted Robertson to withdraw from the case on the ground that Cabello no longer wanted his services. The court then appointed Robert Truitt to represent Cabello for sentencing and any other post-trial proceedings. Truitt, however, fell down on

the job when he neglected to file a notice of appeal, contrary to Cabello's wishes. In February 1997, Cabello, now represented by David Thomas, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, alleging that the performances of her trial and sentencing counsel had been unconstitutionally deficient. The government agreed that Truitt, insofar as he was acting as appellate counsel, had rendered constitutionally deficient services, but it argued that trial counsel had been adequate.

Eventually, the district court held a hearing on the § 2255 petition. At that hearing, Cabello argued that she had been denied effective assistance of *trial* counsel in violation of the Sixth Amendment because Robertson was being paid by Rodriguez–Corral. This circumstance created a conflict of interest, she claimed, because as a potential co-defendant Rodriguez–Corral had an interest in Cabello's defense that was separate and distinct from her own. She maintained that the trial judge should have realized that Rodriguez–Corral was bankrolling her defense, picked up on the potential conflict of interest, and conducted an appropriate inquiry. Because no such inquiry was undertaken, Cabello asserted that she is entitled to a new trial under *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

In the alternative, Cabello requested a new trial under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), on the ground that her attorney's performance was diminished by an actual conflict of interest. In particular, Cabello claimed that Robertson's loyalty to Rodriguez–Corral hindered his ability to negotiate a plea bargain for Cabello. For example, Robertson did not suggest using his knowledge of Rodriguez–Corral's whereabouts as a bargaining chip, nor did he inform Cabello of her right not to testify. Cabello further testified that she had not known that Nunez was coming to represent her until he appeared in the courtroom and that she never signed a document requesting his representation. Furthermore, Nunez told her that Robertson was going to represent her at trial because Nunez himself intended to represent Rodriguez–Corral should the need arise.

Robertson also testified at the § 2255 hearing. He admitted that he had met with Rodriguez–Corral in a Mexican town just across the border from Brownsville to discuss Cabello's case. According to Robertson, Rodriguez–Corral made it clear that he was not planning to return to the United States. Under the Extradition Treaty between the United States of America and the United Mexican States, art. 9, 31 U.S.T. 5059, T.I.A.S. No. 9656, the Mexican government is not obliged to extradite its own nationals to the United States. Nor has it chosen in the past to exercise its discretion to do so. Robertson thus considered it unlikely that Rodriguez–Corral could be forced to face trial for his role in the conspiracy, nor did he see how Rodriguez–Corral's location could have been used as a bargaining chip for Cabello. He maintained that he had engaged in plea negotiations with the government but had been unable to reach a satisfactory agreement. Last, Robertson recalled discussing Cabello's testimony with her before trial, but he could not remember whether he had specifically informed her of her right not to take the stand.

■■■ After the hearing, the court denied Cabello's petition insofar as it related to her trial counsel, but, in light of the ineffectiveness of her appellate counsel, it vacated her sentence and re-entered judgment. In so doing, it rejected Cabello's arguments with regard to Robertson's performance at trial. The court found that it could not reasonably have been expected to deduce who was paying for Cabello's defense, nor was there anything that should have alerted the judge to inquire into the potential conflict of interest. In addition, the court was not persuaded that Robertson's performance had been adversely affected by an actual conflict of

interest. We review the district court's determination that Cabello was not denied effective assistance of counsel due to a conflict of interest *de novo*. *Spreitzer v. Peters*, 114 F.3d 1435, 1450 (7th Cir.1997). (We note that, despite Cabello's earlier desire to take a direct appeal, the finding of ineffectiveness of appellate counsel, and the court's re-entry of the underlying judgment, Cabello has not complained about anything in the trial or sentence apart from her ineffectiveness of counsel point. She has therefore waived any other possible arguments that she might have made on direct appeal.)

## II

■ Ineffective assistance of counsel claims generally are evaluated under the standard detailed in *Strickland v. Washington*: the argument will succeed only if the petitioner demonstrates both that her attorney's performance fell below an objective standard of reasonableness and that she was actually prejudiced by the deficient performance. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When an ineffective assistance claim is based on an alleged conflict of interest, however, we impose a somewhat lighter burden on the petitioner with regard to the prejudice requirement. Recognizing that loyalty to her client is among the most basic of an attorney's duties and the near impossibility of measuring the precise effect on the defense of representation corrupted by a breach of this duty, we presume prejudice in certain cases. *Id.* at 692, 104 S.Ct. 2052; *Holloway*, 435 U.S. at 489, 98 S.Ct. 1173; *Spreitzer*, 114 F.3d at 1450; *United States v. Fish*, 34 F.3d 488, 492 (7th Cir. 1994).

■ The extent to which the defendant must demonstrate prejudice depends on whether and to what extent the conflict was brought to the attention of the trial judge. *Spreitzer*, 114 F.3d at 1450; *Fish*, 34 F.3d at 492. There are two options. First, if the defendant or her attorney alerted the trial judge to a possible conflict of interest or the judge otherwise knew or reasonably should have known that such a possibility existed, we will presume that the defendant was prejudiced if the judge failed to conduct an inquiry into the matter. *Holloway*, 435 U.S. at 484–91, 98 S.Ct. 1173; *Fish*, 34 F.3d at 492. However, if the trial judge was not put on notice of a potential conflict, we will find prejudice only if the defendant demonstrates that her counsel actively represented conflicting interests and that the conflict adversely affected the counsel's performance. *Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708; *Fish*, 34 F.3d at 492.

■ Cabello has tried both approaches. She first urges us to find that she is entitled to a presumption of prejudice under *Holloway*, because the trial judge should have known that Rodriguez–Corral was financing her defense and because third-party fee arrangements involving indigent defendants and drug kingpins are inherently problematic. If she can succeed at all, it must be under the "should have known" branch of *Holloway*, because it is clear that neither the prosecution nor the defense raised the conflict of interest issue at trial, nor did they even suggest that Rodriguez–Corral might have retained Nunez's and Robertson's law firm.

In the end, Cabello is reduced to arguing that the fact of a third-party fee arrangement is enough by itself to trigger the trial judge's suspicions about a potential conflict of interest, and thus the duty to inquire further into the matter, even when neither party informs the judge of the identity of the third party or otherwise suggests that there is a conflict. That is not the rule, and for good reason. The Sixth Amendment does not require trial judges to behave like detectives, independently piecing together clues and speculating about how attorneys and co-conspirators might be connected. This does not mean that judges are allowed to behave like ostriches either; in some cases a potential conflict of interest may be so obvi-

ous that judicial inquiry is necessary even if neither party says anything, and in other cases the parties may place enough on the record that the judge should reasonably know about the potential conflict even if the parties do not spell it out. This is not such a case, however. Cabello is simply reading too much into the facts that Rodriguez–Corral was both Cabello's paramour and the ringleader of the conspiracy for which she had been charged, that Rodriguez–Corral might have fled to Mexico, and that the attorneys who appeared to represent her in Indiana were from the bordertown of Brownsville, Texas. As the district judge noted, that a private attorney should appear without warning to take over the representation of a defendant who previously claimed indigence is not a particularly suspicious occurrence. Indeed, friends and family members often come forward with last minute legal assistance, and it is not at all unusual for the attorneys they retain to appear without the defendants' prior knowledge. We also see no defensible institutional reason to instruct district judges to regard with suspicion an out-of-state lawyer who otherwise has satisfied the requirements for practice before the relevant court.

Cabello suggests that the trial judge should have been particularly vigilant in her case because she was an indigent defendant alleged to have participated in a drug conspiracy. She calls our attention to *Quintero v. United States*, 33 F.3d 1133 (9th Cir.1994), in which the Ninth Circuit expressed its desire to put trial judges on notice of the need to make sure that indigent defendants in drug cases who are represented by counsel paid for by a drug kingpin are aware of the potential conflict of interest and voluntarily waive their right to object on that basis. *Id.* at 1134. Here, of course, the court did not know that Rodriguez–Corral was paying Nunez at the time Nunez initially appeared. Furthermore, *Quintero* involved only allegations of an actual conflict of interest, and therefore did not address the circumstances under which a potential conflict

imposes a duty to inquire. The question presented in *Quintero* was whether the defendant's allegations were sufficient to require an evidentiary hearing to determine whether his attorney had represented a conflicting interest that prejudiced his defense. In Cabello's case, the trial judge held the appropriate evidentiary hearing. Thus, to the extent *Quintero* is instructive, the trial judge here met its requirements.

Cabello also cites *Wood v. Georgia*, 450 U.S. 261, 268–69, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), in which the Supreme Court explained the risks of permitting the leader of a criminal enterprise to provide legal representation for lower-level co-conspirators: "One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against the [leader] or from taking other actions contrary to the [leader's] interest." *Id.* at 269, 101 S.Ct. 1097. In *Wood*, the Supreme Court held that the potential for a conflict of interest was sufficiently obvious that the trial judge should have investigated the matter further. *Id.* at 272–73. For the reasons we have already explained, however, the potential was anything but obvious here, which makes *Wood* distinguishable.

■■ Cabello also argues that she suffered actual prejudice as a result of her attorney's loyalty to Rodriguez–Corral, and that she therefore is entitled to a new trial under *Cuyler*. As we have noted, in order to succeed on this argument, Cabello must show that Robertson actively represented conflicting interests and that the conflict adversely affected his performance. *Fish*, 34 F.3d at 492. She cannot meet this standard. There is simply no evidence that Robertson's connection to Rodriguez–Corral compromised his representation in any way. The mere fact that Rodriguez–Corral paid Robertson's fees is not enough to support a finding of an actual conflict. See *United States v. Corona*, 108 F.3d 565, 575 (5th Cir.1997); *Bu-*

*cuvalas v. United States,* 98 F.3d 652, 657 (1st Cir.1996).

The defense strategies that Cabello condemns Robertson for not pursuing strike us—as they apparently struck Robertson—as weak. For example, Cabello insists that Robertson should have attempted to use his knowledge of Rodriguez–Corral's whereabouts as a bargaining chip. Yet there is no reason to believe that the government would have been interested in whatever information Robertson might have provided along those lines. As Cabello herself points out, everyone involved in the investigation assumed that Rodriguez–Corral had fled to Mexico. Even if Robertson could have pinpointed the exact house in Mexico to which Rodriguez–Corral had fled, it is extremely doubtful that this information would have proven useful to the government: certainly Rodriguez–Corral would not have decided to return to the United States if summoned; the Mexican government would not have extradited him; and federal agents could not lawfully have crossed the Mexican border to apprehend and bring him back to the United States forcibly. (*United States v. Alvarez–Machain,* 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992), is not to the contrary; that case held only that a criminal defendant may not avoid prosecution because of irregularities in the method by which he was moved from a foreign country to the United States. It did not confer general authorization on U.S. agents to kidnap individuals outside the United States and forcibly return them for trial.) There is also nothing in the record to suggest that Robertson could have tricked Rodriguez–Corral into meeting him at some location within U.S. borders, even if the federal agents might have welcomed such a trap.

Cabello also believes that Robertson's inability to obtain a plea agreement demonstrates actual prejudice. Once again, we disagree. In fact, his failure is most likely attributable to Cabello's own steadfast position throughout her prosecution that she had been unaware that Rodriguez–Corral was involved in a drug conspiracy. Cabello does not fault Robertson for not making a greater effort to dissuade her from this tactic. Indeed, it appears to remain Cabello's defense of choice to this very day.

In sum, we find no basis for determining that Cabello was denied effective assistance of trial counsel due to a potential or actual conflict of interest. Accordingly, we AFFIRM the judgment of the district court.