In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3879

United States of America,

Plaintiff-Appellee,

v.

Richard Pergler,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 469--Harry D. Leinenweber, Judge.

Argued September 11, 2000--Decided December 4, 2000


   Before Bauer, Evans, and Williams, Circuit Judges.

   Bauer, Circuit Judge.  Richard Pergler was
convicted of mail fraud, money laundering, and
submitting false claims in connection with a
scheme to fraudulently bill Medicare for
incontinence products. Before his indictment,
Pergler employed attorney Paul DeMuro of Latham
& Watkins to counsel him regarding Medicare
coverage for some of the products he sold. After
his indictment, Pergler employed two other Latham
& Watkins attorneys, Herve Gouraige and Michael
Leib, to defend him. In this direct appeal,
Pergler contends that his trial counsel was
forced to choose between vigorously representing
him and protecting their colleague, DeMuro. This
conflict of interest, Pergler argues, caused
Gouraige and Leib to violate his Sixth Amendment
right to effective assistance of counsel. Pergler
urges us to vacate his convictions and remand the
case for a new trial. We decline to do so.

I.  Background

   Pergler was convicted of selling non-
reimbursable adult incontinence products, notably
adult diapers and "fempouches" to Medicare
patients, and fraudulently billing the products
to Medicare. Medicare assigns products to an HPPC
code group, which, among other things, indicates
whether the product may be billed to Medicare.
Adult diapers are assigned to a non-billable
code, A4554. Pergler, however, billed "belted
undergarments" and "briefs" to Medicare under
billable code A4328, arguing that their status

fell into a gray area.

In 1994, Pergler became aware of the fempouch, a diaper-like incontinence product with an insert to collect urine samples. At the time Pergler began selling the fempouch, it was a new product with an undetermined billing status. The inventor of the fempouch informed Pergler that his attorney, Joy Thomas, was working to determine the billing status of the product. Pergler retained Paul DeMuro, a Latham & Watkins attorney from California, to advise him about billing the fempouch to Medicare. DeMuro, with Thomas and Medicare expert Ron Nicholson, participated in two conference calls regarding the billable status of the fempouch. Nicholson opined that the fempouch was billable to Medicare, but urged Pergler to seek a final determination of its billable status from Medicare. Pergler billed the fempouch to Medicare before receiving a final determination.

In October of 1994, the government investigated and indicted Pergler for Medicare fraud. After Pergler's indictment, he retained Herve Gouraige and Michael Leib, both of Latham & Watkins, as defense counsel. One week before trial, Gouraige and Leib informed the government that they intended to mount a good faith defense. In support, they planned to call Thomas, counsel to the fempouch manufacturer, and question her about the two conference calls.

The government was concerned that Thomas' testimony could create a potential conflict of interest for Pergler's attorneys. Specifically, the government theorized that Pergler relied on Thomas' advice of counsel. The government feared that if the defense elicited Thomas' testimony about the conference calls, it would thereby waive Pergler's attorney-client privilege with DeMuro. If the government then called DeMuro as a witness, the defense attorneys would be in a conflict of interest position when they cross examined DeMuro.

The day before trial, the government filed a memorandum raising these attorney-client privilege and conflict of interest issues. The government sought to determine whether Thomas' testimony about the two conference calls would destroy Pergler's attorney-client privilege with DeMuro. The district court ruled that Thomas' proposed testimony would not waive Pergler's attorney-client privilege with DeMuro because the calls were not confidential, and thus were not subject to the privilege.

After the court's ruling, the government asked that Pergler waive his potential advice-of-

counsel defense. Attorney Gouraige indicated to the court that he had counseled Pergler about the waiver and that Pergler waived his advice-of-counsel defense. The court engaged in a colloquy with Pergler during which it briefly explained the potential conflict of interest and confirmed that Pergler indeed wanted to waive his advice-of-counsel defense.

The government then requested that the court appoint independent counsel to advise Pergler of his rights. Again, in a brief colloquy with the court, Pergler indicated that he was aware of his right to discuss the waiver with independent counsel. Pergler, however, declined the court's offer to allow him time to consult with another attorney.

At trial, Pergler's counsel called only one witness on Pergler's behalf, the fempouch manufacturer. The defense did not call Thomas or DeMuro. Pergler alleges that his attorneys' failure to call these witnesses stemmed from their conflict of interest. Further, Pergler argues that the conflict of interest forced the defense to truncate its cross-examination of Nicholson.

Pergler, with new counsel, filed a direct appeal claiming that his Latham & Watkins defense team denied him effective assistance of counsel as a direct result of their conflict of interest. Pergler chose not to use 28 U.S.C. sec. 2255 to bring his ineffective assistance of counsel claim; therefore, we do not have the benefit of a developed factual record.

II. Discussion

Pergler argues that the district court violated his Sixth Amendment right to effective assistance of counsel because it allowed Gouraige and Leib to defend him despite an actual or potential conflict of interest. The defendant bears the burden of proof for an ineffective assistance of counsel claim because we adopt a strong presumption that counsel was effective. See United States v. Herrera-Rivera, 25 F.3d 491, 495 (7th Cir. 1994) (citing Strickland v. Washington, 466 U.S. 668, 690 (1984)).

To prevail, Pergler must prove that (1) his counsel's performance was deficient and (2) the failure to provide adequate representation prejudiced his defense. See Cabello v. United States, 188 F.3d 871, 875 (citing Strickland, 466 U.S. at 687). However, when, as here, the claim is based on a conflict of interest, the defendant can satisfy the prejudice element by proving either that his counsel (1) labored under an

actual conflict of interest, see Strickland, 466 U.S. at 692, or (2) was subject to a potential conflict of interest which the court was or should have been aware of, and which it failed to address adequately, see United States v. Fish, 34 F.3d 488, 492 (7th Cir. 1994) (citing Holloway v. Arkansas, 435 U.S. 475, 484-91 (1978)). We review ineffective assistance of counsel claims de novo. See Cabello, 188 F.3d at 875 (citing Spreitzer v. Peters, 114 F.3d 1435, 1450 (7th Cir. 1997)).

A.  Conflict of Interest

   We are generally reluctant to hear ineffective assistance of counsel claims on direct appeal because most trial records, unsupplemented by a 28 U.S.C. sec. 2255 hearing, lack the evidence necessary to fashion a successful claim. See Fish, 34 F.3d at 491 n.1. In his arguments, Pergler implies that a conflict of interest existed because he received advice from a Latham & Watkins attorney while he was perpetrating Medicare fraud, and hired other Latham & Watkins counsel to defend him from the fraud charges. The fact that both sets of attorneys work for the same firm is not conclusive. When reviewing ineffective assistance of counsel claims, we presume that the attorneys made reasonable judgments and decline to second guess strategic choices. See United States v. Shukri, 207 F.3d 412, 418 (7th Cir. 2000). Pergler simply fails to provide enough proof of a conflict to overcome our presumption.


   1) Actual Conflict of Interest
   Pergler claims that his defense team labored under an actual conflict of interest. An actual conflict of interest exists when "the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." United States v. Horton, 845 F.2d 1414, 1419 (7th Cir. 1988) (citations omitted). Pergler contends that the government admitted an actual conflict of interest when it brought the issue of Thomas' proposed testimony to the attention of the district court. It is clear from the record that the government admitted no such actual conflict. The government merely argued that a conflict of interest problem could arise if Thomas' testimony abrogated Pergler's attorney-client privilege with DeMuro and if DeMuro were subject to cross-examination by Pergler's defense team. (Gov't Mem. Concerning Waiver of Attorney-Client Privilege, 1-2).

   Further, Pergler failed to show that an actual conflict existed. The district court's response to the government's memorandum precluded an actual conflict in this case. The court ruled

that the conference calls, the subject of Thomas' proposed testimony, were not covered by the attorney-client privilege. Therefore, testimony about them would not waive Pergler's attorney-client privilege with DeMuro, and Pergler's defense team could freely question Thomas about the conference calls without creating any conflict of interest. This evidentiary ruling eliminated the possibility that an actual conflict existed regarding Thomas' proposed testimony.

## 2)   Potential Conflict of Interest

Pergler briefly argues that Thomas' proposed testimony caused a potential conflict of interest. The defendant's burden of proof for potential conflict of interest claims differs depending on whether the conflict of interest was brought to the judge's attention. If an attorney brought the potential conflict of interest to the attention of the court, or the court knew or reasonably should have known about the conflict, we will assume prejudice when the judge fails to address the conflict adequately. See Cabello, 188 F.3d at 875 (citing Holloway, 435 U.S. 475, 484–91 (1978); Fish, 34 U.S. at 492). If the trial judge did not have notice of the potential conflict, the defense must prove that his counsel actively represented conflicting interests and that it prejudiced his case. See id. (citing Cuyler, 446 U.S. 335, 350 (1979); Fish, 34 F.3d at 492).

In this case, the judge had notice of the potential conflict of interest addressed in the government's memorandum: that Thomas' proposed testimony about the conference calls could lead to a conflict of interest situation. We believe that the district court adequately addressed the potential conflict created by Thomas' proposed testimony. As explained above, the judge's evidentiary ruling alleviated the potential conflict. Further, the judge investigated and learned that Pergler's attorneys did not plan to call DeMuro to the stand. Given this information, the district court rightly concluded that the risk of potential conflict had been nullified, and allowed the proceeding to continue. Pergler has not shown that an actual or mishandled potential conflict of interest existed.

## B.   Deficient Performance and Prejudice

Pergler next argues that three of his defense team's decisions show deficient lawyering and prejudiced his defense: (1) deciding not to call DeMuro to provide an advice-of-counsel defense or

general testimony; (2) choosing not to call Thomas as a witness; and (3) conducting a brief cross-examination of Nicholson. When evaluating an attorney's performance, we presume that her conduct "falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Foster v. Schomig, 223 F.3d 626, 631 (7th Cir. 2000) (quoting Strickland, 466 U.S. at 689); see Horton, 845 F.2d at 1419 (citations omitted). Pergler fails to overcome the presumption. He does not provide any evidence from the record showing that Gouraige and Leib failed to pursue a legitimate trial strategy by declining to call Thomas and DeMuro as witnesses. Gouraige and Leib may have concluded that Thomas' and DeMuro's testimony would hurt Pergler. These two potential witnesses may have testified that Pergler ignored their advice, declined to resolve the billing issues before submitting claims to Medicare or knowingly defrauded Medicare. Pergler fails to overcome our presumption that his trial counsel followed a sound strategy.

As to the cross-examination of Medicare expert Nicholson, Pergler argues that an exchange between his trial counsel and the court proves that his attorneys tailored their representation to respond to a conflict of interest and that their actions hurt Pergler's defense. During the government's direct examination, Nicholson testified that he believed that DeMuro took his advice more seriously than Pergler and the other conference call participants. Pergler's counsel asked the court to strike this part of Nicholson's testimony. They argued that their cross-examination of Nicholson on this point might require them to call DeMuro to testify about the conference call. The court refused to strike the testimony. Pergler's counsel concluded Nicholson's cross-examination without asking about the basis behind Nicholson's perception.

It is not at all clear that the defense team's decision to truncate cross-examination constituted deficient representation caused by a conflict. First, it is unclear that Nicholson's cross-examination would require the defense to call DeMuro at all. There were three other participants in the conference call besides DeMuro and Nicholson, any of whom could have testified. Second, it is not clear how the claimed conflict of interest would have come into play since the defense team would be questioning Pergler on direct examination. Further, Pergler's attorneys declined the court's offers to require more of Nicholson. The court offered to strike Nicholson's testimony if Nicholson had no

concrete basis for his opinion. It also offered to have the government further explore the basis for Nicholson's opinion. The defense took advantage of neither option.

It is not clear from the record why Pergler's trial counsel opted not to question Nicholson about the basis for his opinion. It is clear, however, that Pergler's counsel had several options for proceeding that would not cause a conflict of interest. We will not guess at defense counsel's reasons for structuring Nicholson's cross-examination as they did./1 The evidence that Pergler marshals is not strong enough to overcome our presumption that his counsel acted adequately.

Even if we assume Gouraige and Leib acted deficiently, Pergler fails to show that their decision not to call DeMuro and Thomas and to cut short Nicholson's cross-examination prejudiced his case. To demonstrate prejudice, Pergler must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. It is insufficient for Pergler to show merely that "the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Pergler does not offer any evidence that Thomas or DeMuro would have provided exculpatory information or that Nicholson's testimony was key to his conviction. Pergler fails to demonstrate that his attorneys' three decisions changed the outcome of his case.

III. Conclusion

In the absence of a 28 U.S.C. sec. 2255 record it is not our function to engage in speculation. We AFFIRM the district court's decision.

FOOTNOTE

/1 Trial lawyers quickly learn that it is manifestly unwise to ask cross-examination questions in two situations: (1) when the answer will be damaging (2) when the answer is unknown. We have no reason to doubt that Pergler's attorneys were following this sage lesson when they declined to question Nicholson about the basis for his beliefs.

Williams, Circuit Judge, dissenting.  In my view, the majority opinion mischaracterizes the claims Richard Pergler raises in this appeal. With respect to nearly all of Pergler's claims, however, these mischaracterizations are harmless because all but one of Pergler's claims are without merit. But, with respect to Pergler's

claim that his trial attorneys rendered constitutionally ineffective assistance of counsel by restricting their cross-examination of Ron Nicholson, I believe these mischaracterizations lead the majority to reach a conclusion that is erroneous. Accordingly, I dissent.

* * *

The majority opinion mischaracterizes Pergler's claims in two ways. First, it treats all but one of Pergler's claims as ordinary ineffective assistance of counsel claims despite the fact that both Pergler and the government view all of Pergler's claims as conflict of interest claims and each of Pergler's claims involves an allegation that his trial attorneys did not pursue an opportunity to bolster Pergler's defense because of a conflict of interest. Second, the majority opinion does not accurately describe Pergler's precise claims on appeal--that his trial lawyers labored under a conflict of interest that caused them: (1) to refrain from pursuing an advice of counsel defense; (2) to truncate Ron Nicholson's cross-examination; (3) to not call Joy Thomas to testify as to her alleged belief that the Fempouch product was reimbursable; and (4) to not call Paul DeMuro to testify as to when Pergler sought guidance on the legality of his actions.

Applying the special standards governing conflict of interest claims to the four precise claims Pergler raises requires an analysis very different from the one employed in the majority opinion. Before taking up Pergler's precise claims, however, I should set out my understanding of how this court reviews conflict of interest claims. As the majority opinion rightly notes, the standard of proof for a defendant who claims that he or she received ineffective assistance of counsel because his or her attorney labored under a conflict of interest depends on whether the conflict was brought to the trial judge's attention. Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980); Holloway v. Arkansas, 435 U.S. 475, 484-85 (1978). If the trial judge was made aware of, otherwise knew of, or reasonably should have known of a potential conflict, the defendant need only establish that the trial judge failed to adequately inquire into the conflict (inadequate inquiry) and that the conflict might have had an adverse effect on counsel's performance (possible prejudice). Spreitzer v. Peters, 114 F.3d 1435, 1450 (7th Cir. 1997); United States v. Fish, 34 F.3d 488, 492 (7th Cir. 1994). If the trial judge was not on notice regarding a potential conflict, the defendant must establish that counsel actively

represented conflicting interests (actual conflict of interest) and that the conflict adversely affected counsel's performance (actual prejudice). Spreitzer, 114 F.3d at 1450; Fish, 34 F.3d at 492.

Even properly characterized, Pergler's first, third, and fourth claims are ultimately without merit. As such, it is not necessary to exhaustively analyze those claims. For completeness sake, however, I will address them briefly. Pergler's first claim--that his trial attorneys did not pursue an advice of counsel defense because of a conflict of interest--must be judged under the inadequate inquiry/ possible prejudice standard as there is no dispute that the parties raised the possibility of such a conflict of interest to the district court. Pergler cannot satisfy this standard, however, because the district court adequately inquired into the conflict and obtained a valid waiver of the conflict from Pergler. See, e.g., United States v. Flores, 5 F.3d 1070, 1078-79 (7th Cir. 1993); United States v. Lowry, 971 F.2d 55, 59-64 (7th Cir. 1992). Pergler's third and fourth claims--that his trial attorneys did not call Joy Thomas or Paul DeMuro to provide certain important evidence--do not involve conflicts that were brought to the district court's attention and, therefore, must be considered under the actual conflict/actual prejudice standard. Under this standard, Pergler's third and fourth claims must fail because there is inadequate evidence in the limited record available to determine whether the alleged conflicts of interest adversely affected the performance of Pergler's trial attorneys; in particular, nothing in the record establishes that an unconflicted attorney would have called either Thomas or DeMuro. See, e.g., United States v. Cirrincione, 780 F.2d 620, 628-31 (7th Cir. 1985).

Pergler's second claim has considerably more merit than his other three claims. His second claim arises out of the decision of his trial attorneys to cut short their cross-examination of Ron Nicholson. As the majority opinion notes, Nicholson testified for the government that, during a conference call regarding whether the Fempouch product was reimbursable, Paul DeMuro took more seriously than Pergler and the other participants in the conference call Nicholson's suggestion that the parties present the product to Medicare authorities. Pergler's trial attorneys wanted to rebut Nicholson's testimony, but informed the district court that they felt they could not do so because any questioning about the basis for his statement "puts Latham & Watkins in a difficult situation," and calling DeMuro to provide rebuttal testimony could not be

done "without raising a serious disqualification issue." Pergler's trial attorneys therefore stuck with their request that the problematic portion of Nicholson's testimony simply be struck, but the district court refused. Pergler now claims that his trial attorneys did not rebut Nicholson's testimony because they labored under a conflict of interest.

The first matter that must be addressed is the government's argument, echoed in the majority opinion, that the decision by Pergler's attorneys to cut short their cross-examination of Nicholson does not even present a potential conflict of interest. The government and the majority opinion suggest that Nicholson's testimony raises no conflict of interest problem because: (1) Pergler's attorneys were given the opportunity to request that a foundation be laid for Nicholson's testimony; (2) DeMuro would have been subject to direct examination, not cross-examination, from his colleagues; and (3) there were participants in the conference call other than DeMuro who could have testified. All of this is beside the point, however. Regardless of how it was to be accomplished, through further questioning of Nicholson, direct testimony from DeMuro, or testimony from other witnesses, Pergler's trial attorneys were left, possibly, with the task of establishing that their colleague was not particularly concerned about presenting the Fempouch product to Medicare authorities for a reimbursability determination. In light of this possibility, I can only conclude that a potential conflict of interest did exist.

The next question, then, is whether the trial court was on notice of this potential conflict. It is clear that the court was, or at least should have been. Pergler's attorneys all but told the judge that because of their obligations to Latham & Watkins they would not be pursuing a possibly fruitful line of cross-examination. They explained that any questioning about the basis for Nicholson's testimony regarding the seriousness with which DeMuro took Nicholson's advice "puts Latham & Watkins in a difficult situation." And, they asserted that calling DeMuro to provide rebuttal testimony could not be done "without raising a serious disqualification issue." The district court clearly was on notice that there might be a conflict of interest problem related to the ability of Pergler's attorneys to rebut Nicholson's testimony.

As the district court was on notice of this potential conflict, the inadequate inquiry/possible prejudice standard governs Pergler's claim that his representation suffered because of that conflict. Considering the inadequate inquiry requirement first, the

question is whether the district court sufficiently probed the potential conflict to determine if there was a possibility that it might ripen into an actual conflict or otherwise took steps to address any possible conflict. Fish, 34 F.3d at 492-94; United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). The district court conducted no inquiry whatsoever. Moreover, the district court did not disqualify counsel or obtain a waiver of the conflict from Pergler. Put simply, the district court's inquiry into the potential conflict of interest behind the decision of Pergler's trial attorneys to cut short their cross-examination of Nicholson was inadequate.

As for whether this potential conflict of interest created a possibility of prejudice, the issue is whether the conflict might have had an adverse effect on the performance of Pergler's trial attorneys. Spreitzer, 114 F.3d at 1450; United States v. Horton, 845 F.2d 1414, 1418 (7th Cir. 1988). I think it might have. As noted above, there is a quite plausible argument that Pergler's trial attorneys did not pursue a more extensive cross-examination of Nicholson because of a conflict of interest. And, it is possible that there is evidence indicating that DeMuro did not take all that seriously Nicholson's advice about presenting the Fempouch product to Medicare authorities, which could have been used both to undermine Nicholson's credibility and to bolster Pergler's good faith defense. Accordingly, I firmly believe that an unconflicted counsel would have presented such evidence, assuming it was available. As such, I can only conclude that there does exist a possibility that prejudice might have resulted from the conflict of interest that allegedly caused Pergler's trial attorneys to truncate Nicholson's cross-examination.

For the foregoing reasons, I believe Pergler has established that his trial attorneys rendered ineffective assistance of counsel. On that basis, I would reverse his conviction.