**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eliseo SOLANO and Bernardo Solano,
Defendants–Appellants.**

**No. 98 CR 97.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 2002.

Decided Oct. 4, 2002.

Before WOOD, Jr., RIPPLE, ROVNER, Circuit Judges.

### ORDER

Bernardo Solano and his brother Eliseo Solano (hereinafter referred to as Bernardo and Eliseo), were charged in a three-count indictment with: (1) conspiracy to distribute in excess of five kilograms of cocaine and in excess of 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 846 & 841(a)(1); (2) distribution of marijuana and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3) traveling in interstate commerce with the intent to carry on unlawful activity (possession and distribution of marijuana) in violation of 18 U.S.C. §§ 1952 and 2. A jury convicted them on all charges, and they were each sentenced to 235 months imprisonment.

Bernardo and Eliseo first contend that the evidence at trial was insufficient to establish a conspiracy, and the court therefore erred in denying their motion for a judgment of acquittal. In analyzing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the prosecution, asking whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979) (emphasis in original); *United States v. Thomas,* 284 F.3d 746, 751 (7th Cir.2002). Bernar-

do and Eliseo specifically argue that the government failed to establish any agreement to commit a crime, which is "[t]he essence of conspiracy." 284 F.3d at 751; *United States v. Shabani,* 513 U.S. 10, 16, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). Instead, they argue that the government proved only two separate incidents, one involving Bernardo and one involving Eliseo.

The first incident occurred in February 1998. At that time, the police executed a search warrant for a residence, and discovered large quantities of cocaine and marijuana hidden under boards beneath the kitchen sink and in the rafters of the garage, as well as in a van in the garage. The search also yielded a 9mm semi-automatic pistol, eleven bottles of Inositol—a cutting agent, and $8900 in cash, including many smaller bills such as 320 dollar bills and 150 ten-dollar bills. The street value of the drugs was well over $1,600,000. Bernardo was arrested at that time, and he admitted that it was his residence and that he lived there. He was in possession of keys to the residence, as well as keys to the garage, and the license on the van listed Bernardo as the owner.

The second incident in which drugs were found involved Eliseo. On July 1, 1998, he was arrested in the parking lot of a Sam's Club transferring approximately 50 pounds of marijuana from one car to the car of an undercover government agent. The approximate value of the marijuana was $50,000. Bernardo was arrested shortly after that incident as well, and they were charged with conspiracy.

Bernardo and Eliseo characterize those two incidents as isolated transactions undertaken independently of each other. The evidence at trial, however, adequately established that Bernardo and Eliseo were acting in agreement with each other to distribute marijuana and cocaine, and that

the two incidents were in furtherance of that conspiracy.

The critical evidence in the trial establishing that agreement was a meeting in a basement office at the Rendezvous Bar between Eliseo, Bernardo, and confidential informant Barbara Doane. Doane had previously been arrested by the police on a drug charge, and had agreed to cooperate with them in identifying her supplier. She arranged to meet Bernardo and Eliseo at her bar, and they discussed her past drug-related debts to them, totaling approximately $31,000, and she gave them $2000 that had been provided to her by the government. They discussed the possibility of a future drug transaction with undercover agent Zamora, who she characterized as a friend of hers. The jury was shown a video and audio-tape of that meeting, and was provided with a transcript of the meeting in English because the conversation took place in Spanish. In fact, the defense provided their own transcript of the meeting as well, so the jury had two English versions of the conversations that occurred. Neither the government nor the defense, however, has provided any record cites to those transcripts in their briefs, nor to most (and in some cases, all) of the other facts set forth in their statements of fact, in clear violation of Fed. R.App. P. 28(a)(7). Our independent review of all eleven volumes of transcripts and four volumes of pleadings leads us to conclude that the transcripts of that meeting were not included in the record on appeal. That is unacceptable behavior in any case, and is particularly disturbing for such a critical part of the trial. It does not impact the outcome of this appeal, however, because the record, and particularly the testimony of Agent Zamora, provides a sufficient basis to support the jury's verdict.

Zamora was present in the van outside the bar to which the video was transmitted, and therefore he was able to hear and observe the conversation among Doane, Bernardo, and Eliseo. (He is fluent in Spanish, and in fact translated the conversation into English for the government.) Neither Eliseo nor Bernardo challenged Zamora's representations as to that conversation, and they do not now argue that it is inconsistent with the transcript of the conversation. Furthermore, other aspects of that conversation were agreed upon in discussions by the defense attorneys in arguing motions before the court. Therefore, the record provides some unrefuted evidence regarding the contents of that conversation.

That evidence establishes that Eliseo and Bernardo met with Doane at the Rendezvous Bar and discussed future drug transactions as well as past drug debts. Bernardo and Doane did virtually all of the talking during that conversation, discussing the price to charge Zamora and the debts owed by Doane to them. At one point, Eliseo produced a paper which he handed to Doane, on which he had recorded the amount of money still owed by Doane to them. That paper was later recovered from his pocket when he was arrested at the Sam's Club parking lot. Eliseo spoke at least one time, in reference to the price that should be charged for the future drug transaction with Zamora. In addition to discussing the possibility of a future transaction, Bernardo noted that he owed $500,000, an amount that represented the bond money paid on his behalf when he was arrested after the search of the residence yielded the cocaine and marijuana. The inclusion of that bond money in the general discussion of drug debts and transactions further tied that incident to the conspiracy as a whole.

At the end of the conversation, Doane, Bernardo and Eliseo ascended to the bar itself, where Doane introduced them to Zamora. Zamora then spoke with Doane to further arrange the future drug transaction between himself and Bernardo and Eliseo, and he agreed to such a purchase but told Doane to obtain confirmation of it from Eliseo and Bernardo, who were sitting at an adjacent table at the bar. Doane then spoke with Eliseo and Bernardo, and returned to Zamora. After that second conversation, Zamora agreed to purchase five kilograms of cocaine and 30 pounds of marijuana from Bernardo and Eliseo.

Pursuant to those plans, Zamora returned to the Rendezvous Bar on July 1, 1998. At Zamora's request, Doane made a couple of recorded calls to Eliseo, and a call to Bernardo. At the conclusion of those calls, Zamora agreed to a change in plans whereby the transaction would be completed in two portions, with Zamora purchasing marijuana on that day in a quantity of 50 pounds rather than 30 pounds. He then followed Doane to the Sam's Club, where Eliseo was waiting with the marijuana, and the transfer was made, culminating in Eliseo's arrest.

That sequence of events adequately establishes an agreement between Eliseo and Bernardo to distribute cocaine and marijuana. Zamora's testimony establishes that both Bernardo and Eliseo were involved in arranging for the future marijuana and cocaine transaction, and that part of that transaction was completed. The evidence indicates that they worked together for both past and future drug transactions. Although Bernardo dominated the discussion of the past drug debts, it was Eliseo who produced the record of Doane's drug debt, and it was Eliseo who took the $2000 from Doane. Similarly, although Bernardo discussed fu-

ture drug transactions, Eliseo was the one who physically delivered the drugs at the Sam's Club parking lot. The size of the drug debt owed by Doane to Eliseo and Bernardo, as well as the ability of Bernardo to obtain the $500,000 in bond money, further indicates that their drug dealings were extensive in nature. A jury could properly find that they worked together to facilitate multiple sales of marijuana and cocaine from the evidence presented to it, and therefore their challenge to the sufficiency of the evidence must fail.

■ Bernardo and Eliseo also assert a number of claims individually. Bernardo asserts that his trial counsel rendered ineffective assistance because he had a conflict of interest when representing him. Claims of ineffective assistance of counsel are seldom the proper subject of a direct appeal, because such claims often require evidentiary development in order to succeed. *United States v. Manjarrez,* 258 F.3d 618, 626 n. 4 (7th Cir.2001); *United States v. Pergler,* 233 F.3d 1005, 1009 (7th Cir.2000). At oral argument, we asked Bernardo's counsel whether he desired to preserve his claims and raise them in a § 2255 motion. He conceded that some of his arguments for ineffective assistance could only be properly raised in a § 2255 motion in which facts outside the record could be developed, and he indicated a desire to proceed on only the remaining part of that claim on direct appeal. An ineffective assistance claim cannot be pursued piece-meal, however, and therefore if we consider part of his claim at this time, he would be precluded from raising ineffective assistance in a subsequent proceeding. *See Ryan v. United States,* 214 F.3d 877, 879 (7th Cir.2000)("A defendant who complains on direct appeal about the quality of his lawyer can't try again on collateral attack unless there has been an intervening change of law.") Accordingly, in

order to preserve Bernardo's ability to present the claim in its totality, we will not consider the claim at all on direct appeal, and leave it for full development in a § 2255 motion.

 Finally, Bernardo and Eliseo raise various challenges to their sentences, but these claims are answered by the language of the indictment and the jury verdict form. The indictment alleged in Count One that Eliseo and Bernardo "conspired, confederated and agreed together with each other ... to knowingly possess with the intent to distribute in excess of five (5) kilograms of a mixture and substance containing a detectable amount of cocaine, ... and in excess of 1000 kilograms of a substance containing marijuana ...." The jury returned a verdict finding the defendants guilty of "the charge contained in Count One of the indictment." Accordingly, the jury necessarily found that Bernardo and Eliseo conspired to possess with intent to distribute more than 5 kilograms of cocaine *and* more than 1000 kilograms of marijuana. Eliseo's argument that the jury could have found him guilty of conspiracy to possess only marijuana is belied by the indictment and the jury verdict form. Similarly, Bernardo's challenge to his sentence based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is unavailing because the sentence imposed was less than the maximum allowed by statute for the offense found by the jury, and the record provides sufficient evidence to support that jury finding.

The decision of the district court is AFFIRMED.